TRUSTEES OF PHILLIPS EXETER ACADEMY *v.* EXETER.

A building used partly as a dormitory and students' boarding-house, and partly as a public house, is not exempted from taxation, under a provision that "all lands, tenements, and personal estate, that shall be given to the trustees for the use of the academy, shall be and hereby are forever exempted from all taxes whatsoever."

PETITION, for the abatement of taxes, assessed on the plaintiffs' estate, known as Gorham Hall. Facts agreed.

The plaintiffs' charter, granted in 1781, contained a provision that "the lands, tenements, and personal estate, that shall be given to the trustees for the use of the academy, shall be and hereby are forever exempted from all taxes whatsoever."

An act was passed in 1783 explanatory of the above exemption clause, which provided "that the property so exempted shall not continue to be exempted when transferred, vested, and shall remain in the right of any other person, or persons, or body corporate."

The estate in question was purchased by the plaintiffs for a students' boarding-house; about two thirds of it is occupied by students; it is in charge of a superintendent, who takes care of the rooms, and furnishes board to the students who hire the rooms, charging them a fixed sum, which is regulated by agreement between the superintendent and the plaintiffs. The remainder is used by the superintendent for his own profit. The plaintiffs receive the pay for the rent of the rooms occupied by the students.

*Buzell*, for the plaintiffs.

*Marston*, for the defendants.

STANLEY, J. The Bill of Rights of this state, *art.* 12, declares that "every member of the community has a right to be protected by it in the enjoyment of his life, liberty, and property. He is therefore bound to contribute his share in the expense of such protection, and to yield his personal service, when necessary, or an equivalent."

The Constitution, *art.* 5, confers upon the general court power "to impose and levy proportional and reasonable assessments, rates, and

taxes upon all the inhabitants of and residents within the state, and upon all the estates within the same."

These provisions are only an affirmance of one of the fundamental principles upon which all government is established; for as all persons and property are alike entitled to its protection, so ought they all to contribute, equally and proportionally, to the expense incident to that protection. The right to protection, and the duty to contribute to that result, are reciprocal. The taxing power is an incident of the highest sovereignty. It is indispensable to the existence of every independent government. It is granted by all, for the benefit of all. It resides in government as a part of itself. By virtue of it the state may tax all the persons, natural and artificial, and all their estates, within her borders.

From this right of the government and the duty of the citizen it necessarily follows that it will never be assumed that the government intended to release any part of the property entitled to its protection from the burden incident to such protection, and it is the duty of those who assert that claim to show it in language which can admit of no other conclusion; and where doubt arises as to the meaning of the language used which it is claimed confers the exemption, it will be construed most strongly against those who maintain the exemption. *Bank* v. *Billings*, 4 Pet. 514; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *P. & W. R. R. Co.* v. *Maryland*, 10 How. 393; *Bank* v. *Skelly*, 1 Black 436; Sedgwick Stat. and Const. Law, 297.

Regarding, then, this principle of construction as fully established, the clause in the plaintiffs' charter, under which the exemption is claimed, must be strictly construed, and, if the meaning be doubtful, the defendants must have the benefit of the doubt.

The exemption is granted to the plaintiffs as to " all lands, tenements, and personal estate, that shall be given to the trustees for the use of the academy."

About two thirds of the property claimed to be exempted is used by the students as a boarding-house and dormitory; the remainder is used and occupied by the superintendent, who has charge of the building, for himself and his assistants, as a public house. He furnishes board to the students, for which he is paid by them, and he takes care of their rooms, and receives for his own use the pay for the other regular and transient boarders, and for the rooms not occupied by the students. The plaintiffs derive no advantage or benefit beyond the pay for the rooms occupied by the students.

Is the use here shown such as was understood and intended, by the legislature which granted the plaintiffs' charter, would exempt their property from taxation ? We think not. The use intended as a ground of exemption was exclusive. It was a direct use for the purposes of the academy. It was the use that was to determine the exemption,—the direct, not the indirect or remote. Ownership was not to be the test of exemption; use was. The idea that ownership was to be the test was excluded by the language in which the exemption is

expressed. The plaintiffs had no authority to hold any property except such as might in some way subserve the purposes for which their charter was granted, and in this view, all the property owned by them is for the use of the academy ; and if the intent had been to grant an exemption as broad and comprehensive as that here claimed, this intent would have been expressed in unequivocal language. The fact that the legislature ignored ownership and made use the test, shows unmistakably that they recognized the essential distinction between the two, and fixed the latter, in preference to the former, as the basis of exemption. *Society* v. *Detroit*, 3 Mich. 172 ; *College* v. *Crowl*, 10 Kans. 442, 450 ; *College* v. *Comm'rs*, 8 Kans. 344 ; *Pierce* v. *Cambridge*, 2 Cush. 611.

The view for which the plaintiffs contend fixes no limit short of the absolute exemption of all the property owned by them, or which they may hereafter acquire ; for, having no power to hold property except for the purposes contemplated by their charter, all the property owned by them is, either directly or indirectly, proximately or remotely, for the use of the academy. This construction would allow the plaintiffs to enter the lists with every other person, natural or artificial, and the capital thus invested would be forever exempted from the burdens others must bear, provided only the profits were used to carry out the purposes of their charter. In the absence of express language to that effect, no such view can be presumed. The phrase " for the use of" is not to be taken in the same sense as *for the benefit of.* It is used in a more limited and restricted sense. The sole intent of the legislature was, to grant to the plaintiffs exemption from taxation on such property, and such only, as was used by them directly in carrying on their enterprise,—to their school-houses and lands, devoted immediately and exclusively to the purposes of their grant.

The state cannot discriminate between the uses which different societies or individuals will make of their business, and determine that this society or individual makes a more worthy disposition of the proceeds of his business than that, and therefore the one shall be taxed and the other not. The law applies to the property as it finds it in use; and not to what may be done with its accumulations. *Cinn. Coll.* v. *State*, 19 Ohio 110. Public policy, and the intention of the legislature as expressed in the plaintiffs' charter, are alike against the exemption of this property from taxation.

In coming to our conclusion, we have not thought it necessary to consider whether the plaintiffs' charter creates a contract with the state which cannot be modified or rescinded, nor what effect the adoption of the constitution, subsequent to the charter, may have had upon it ; for we are of opinion, that, assuming the charter to be a valid contract which no subsequent legislature could abrogate, this petition, on the facts stated, must be denied, for the reasons given.

*Case discharged.*

DOE, C. J., did not sit.