Sullivan, }
June, 1896. }

### NEWPORT v. UNITY.

Real estate with appurtenances thereto used for water-works, when owned by one town and situate in another, is not exempted from taxation in the town in which it is located, under P. S., c. 55, s. 2.

PETITION, for abatement of taxes.  Facts agreed.  Under the authority of c. 169, Laws 1895, the town of Newport owns and operates water-works constructed and used for extinguishing fires and other public purposes.  The town charges, and collects from, those of its inhabitants who use the water, reasonable tolls for the water used by them respectively.  A tract of land containing an acre and a quarter, situated in Unity at the outlet of Gilman pond, with a dam and appurtenances upon it, and a line of main pipe underground extending from the dam to the central village in Newport, form a part of the works.  In April, 1895, the selectmen of Unity taxed to the plaintiffs said land and appurtenances and the portion of said main pipe within the limits of Unity.

*Albert S. Wait* and *Levi W. Barton,* for the plaintiffs. In March, 1894, the town of Newport, in its capacity as a public municipal corporation, in view of the public needs and with a sole regard for the public interests, determined to provide itself with a better supply of water than it then possessed. It is plain from the votes then passed that the sole purpose and object were the public interest and welfare. The water is taken from the Gilman pond, situate in the town of Unity, but one of the public waters of the state, in which there is and can be no private ownership. This enterprise, purely public in its purposes and objects, not in the private interests of the inhabitants of Newport, not in the private interests of the inhabitants of Newport in its corporate capacity, but in the general interests of the whole public, as much as are its highways or its schools, is expressly authorized by *c.* 169, Laws 1895. Is an enterprise of this nature, authorized by the public law of the state, because the public waters of the state are conveyed through a sister town, liable to have the appliances for conveying that water taxed by the latter town? That it was competent to the legislature to have made the grant subject to taxation by Unity, as it may in its discretion subject any other property held for municipal purposes to taxation, we do not deny. The grant was made, however, without any such burden, and no general legislation subjects such property to taxation. The case raises two questions, (1) as to the aqueduct, or main pipe, and (2) as to the acre and a quarter of land.

I. Towns are public corporations, existing not by their own volition, or by any choice of their own, or of their inhabitants. They are divisions of the state, formed by the sovereign power for the purposes of public administration, and in order to better provide for the public welfare. 1 Dill. Mun. Cor., *ss.* 23, 28, 29; *Eastman* v. *Meredith,* 36 N. H. 284; *Hill* v. *Boston,* 122 Mass. 344. If in any case special powers are conferred upon towns or upon any one town, it is, or should be, always in the public interest. No legislation conferring special powers upon towns with a view to provide for or further private interests can be legitimate. The presumption must therefore be, that in granting or conferring powers upon towns, whether by legislation of general application or by special acts, the legislature has the public interest and the public welfare alone in view. In the exercise of these powers towns are but performing a public duty, one which they have not voluntarily assumed, and cannot neglect without being derelict in duty. In performing the duties thus prescribed to them, towns are obliged to incur large expenses, for which their inhabitants are compelled to submit to taxation. In the case at bar, all the inhabitants of Newport are taxed to pay the expenses of this enterprise; individuals taking and pay-

ing tolls for the water are again taxed to the amount of the tolls for the expenses of the same enterprise. If the town in its corporate capacity is taxed in Unity upon the aqueduct, that is another tax upon the same subject-matter, a method of dealing with an enterprise of public beneficence sufficiently penal, we should think, to discourage similar enterprises elsewhere, if not to prove fatal to the one with which we are now dealing.

We do not by any means lose sight of the case of *Lake Co.* v. *Gilford,* 64 N. H. 337, nor do we question in the least the justness of the doctrine of that case. That was a purely private undertaking, commenced and prosecuted exclusively for the purposes of private gain, and the tax was upon the private individual ownership in a reservoir of water, neither of which circumstances is an element in the case at bar. In this case the town of Newport owns no reservoir; it has a mere license, revokable at any time by the state, to draw water from one of the public fountains. It is not, in this case, a reservoir that is taxed, but in addition to the acre and a quarter of land, the aqueduct or pipe by means of which the water is utilized, neither of which was true in *Lake Co.* v. *Gilford.*

Among the authorities in support of the proposition, as a general rule, that a public corporation is not taxable for property it holds for public purposes, are the following: *Worcester County* v. *Worcester,* 116 Mass. 193; *People* v. *Salomon,* 51 Ill. 37; *Directors* v. *Manheim,* 42 Pa. St. 21; *Wharf Co.* v. *Galveston,* 63 Tex. 14; *People* v. *Doe,* 36 Cal. 220; *Louisville* v. *Commonwealth,* 1 Duv. (Ky.) 295. "It is always to be assumed that the general language of statutes is made use of with reference to taxable subjects, and the property of municipalities is not in any proper sense taxable." Cool. Tax. 131. *State* v. *Gaffney,* 34 N. J. Law 131, applies the doctrine to a state of facts much like those in the case at bar, and holds that the aqueduct and land were not taxable. See, also, *United States* v. *Railroad,* 17 Wall. 322. Although not in point in its facts, the discussion of the nature of municipal corporations and their relations to the state and the public, in *Eastman* v. *Meredith,* 36 N. H. 284, bear much weight, as it seems to us, upon the question now before the court, and are strongly corroborative of the views upon which we insist.

We contend, further, that the taxation of this aqueduct is inconsistent with the grant of *c.* 169, Laws 1895. That act assumes the public character of the rights granted, confers upon Newport the right to appropriate one of the public waters of the state, and the power of eminent domain for the purposes of their exercise and enjoyment. The taxation of this privilege as private property is inconsistent with the intention of this grant and tends to that extent to defeat it.

II. As to the acre and a quarter of land acquired by Newport for the purposes of the enterprise, the taxation of that may stand to some extent on different grounds; but the right to tax it is contrary to the whole line of cases which hold that property held by public corporations for public purposes is not subject to taxation. The legislature has authorized the town of Newport to acquire and hold that real estate for the public purpose in question. Doubtless that authority might have been granted with the condition that the property should be subject to taxation by Unity; but as it was not, it should stand upon the same ground as real estate held in general by public corporations for public purposes. Why should this property be taxed any more than county farms, jails, and court houses? Why should not the state prison be taxable by the city of Concord? It is said that Newport realizes a revenue by way of the tolls received for the water used by its citizens. The state realizes a revenue through the labor of the convicts, and the counties, from the work done at their county farms and houses of correction; but in neither of these nor any like cases, have we heard that these incidents divest the property of its public character and reduce it to that of mere private ownership. Nor is the town of Newport, by reason of holding, by grant of the same sovereignty by which it has its existence, property located in another town, any less a public corporation. The fact that a revenue will be derived from this water enterprise does not divest it of its public character, or afford any reason why it should be hampered and rendered less useful by being subjected to taxation. *State* v. *Gaffney, supra,* is here strongly in point.

Another view of the case seems to be material. The taxes upon the land and aqueduct are assessed separately and both as non-resident, as they should be according to *Bowles* v. *Clough,* 55 N. H. 389. As to the practicability of collecting the tax upon the land, there can be no question. But how is collection of the tax upon the aqueduct to be made? It is settled doctrine that " taxes upon real estate of non-residents . . . can only be collected by a sale of the land taxed," and are " not a personal charge against the non-resident owner." *Dewey* v. *Stratford,* 42 N. H. 282; *Cocheco Co.* v. *Strafford,* 51 N. H. 455, 471; *Bowles* v. *Clough, supra.* A sale of that part of this aqueduct lying in Unity, which is the subject of the tax, disconnecting it from that part lying between it and the reservoir in Newport, would not only render the whole useless and convey nothing of value, but would be the destruction of the whole property itself. A sale could not convey the mere material of the aqueduct, with the right to remove it, for two reasons: (1) Because there is no license granted by the landowners to enter and remove the pipe, but only to convey water through it as far as it lies, for the specific

purpose named; and (2) because such a right conceded treats the property as a personal chattel, whereas by the statute (P. S., c. 55, s. 3) it is to be taxed as real estate. How can property be the subject of taxation, the very effect of taxing which must be its destruction? The assumption seems to involve too nearly an absurdity to be admitted as sound.

It may possibly be argued by the defendants, in view of the observations of the court in *Carpenter* v. *Dalton*, 58 N. H. 617, that the plaintiffs should be left to their chances of losing title, or having a cloud thrown over it if payment is enforced by a sale for non-payment. The doctrine of *Carpenter* v. *Dalton* can hardly be held applicable to this case. The objection here is, not that the plaintiffs will be in danger of losing title to the property by a sale; but that by a sale no purchaser can acquire a title, for the reason that such a sale involves the destruction of the property itself. *Carpenter* v. *Dalton* left the parties to try the question of title in a future suit. Here, whether we are right or not upon this question, there will be no dispute with a purchaser respecting the title. The question is, can there be any sale of the property assumed to be taxed? We contend that there cannot, for the reason that the property sold cannot exist.

*Ira Colby*, for the defendants.

WALLACE, J. The question for decision is whether that portion of the water-works owned by the town of Newport within the limits of the town of Unity is subject to taxation in the latter town. The act (Laws 1895, c. 169) which authorized the town of Newport to construct the water-works contains no provisions in regard to their taxation. By s. 3, c. 55, P. S., " Buildings, mills, carding machines, factory buildings and machinery, wharves, ferries, toll-bridges, locks and canals, and aqueducts, any portion of the water of which is sold or rented for pay, are taxable as real estate." This section of the statute in express terms subjects to taxation as real estate " aqueducts any portion of the water of which is sold or rented for pay." The town of Newport charges " those of its inhabitants who use the water reasonable tolls for the water used by them respectively." According to the plain terms of the statute, its water-works are taxable as real estate, unless they are excepted as " real estate of the . . . town used for public purposes." P. S., c. 55, s. 2. This last section in express terms exempts from taxation real estate of the town used for public purposes. Conceding that the water-works of the town of Newport are used for public purposes, they are exempt from taxation by this statute, if this exception applies to property of a town outside its geographical limits. But the exemption extends only to real estate within the town, which is owned by it and used for public purposes.

Prior to 1867, there was no provision of the statutes exempting the real estate of towns from taxation. In the revision. of 1867 was introduced for the first time the material provision in regard to the exemption of town property from taxation. "Real estate . . . is liable to be taxed except . . . property of the state, county, or town." G. S., *c.* 49, *s.* 2. This provision remains substantially the same. G. L., *c.* 53, *s.* 2; P. S., *c.* 55, *s.* 2. In 1867, towns had no general authority to purchase real estate outside . their limits. G. S., *c.* 34, *ss.* 3, 4, 9. They might acquire land outside their limits as a gift or by levy in the collection of a debt, but they were not then authorized to buy land outside their limits, or even to acquire it by eminent domain. Subsequently, numerous towns and cities have been authorized to establish water-works by acts broad enough to authorize them to take and condemn land outside their limits. If there were at the time of the revision of 1867 no statutes authorizing towns to purchase real estate outside their limits, it seems plain that the statute is not necessarily to be construed as exempting such property from taxation. The legislature could not have had it in mind. Hence, when they subsequently authorized towns and cities to acquire for public purposes lands in other towns, it cannot be justly presumed that they intended such property to be exempted from taxation.              .

The purpose of this statute of exemption was to avoid the assessment and collection of a tax upon the property of a town used for public purposes by the people of the town, as on a pound or town house, for the reason that it would be a useless and unnecessary expense and trouble. But to interpret this statute so as to exempt the property of a town used for public purposes, which is situate in another town, is to extend the exemption beyond the reason and purpose of the statute. To thus interpret it, would be to give it a meaning which would make its operation unequal and not in accord with the spirit of our taxation laws, which are based upon the just and equal distribution of the burden of public taxes. It is not to be presumed that it was the intention of the legislature to accomplish so unjust a result as to deprive one town of its taxable property for the benefit of another, or that one town should be deprived of its right to tax property within its limits which was used for public purposes, in which it or its people had no interest and from which they derived no benefit, and which were beneficial alone to some other town and its people. This doctrine carried to its legitimate conclusion might practically bankrupt some of our smaller towns by depriving them of a very large portion of their territory upon which to exercise the power of taxation; as, for example, suppose the late Austin Corbin had given to the town of Newport his park, situate outside the limits of that town and embracing a large por-

tion of the area of several adjoining towns.  It would require express terms to warrant a holding that one town can invade another and, by taking a portion of the territory for their own benefit, whether the purpose be in a legal sense public or private, subject the remaining lands of such town to a heavier burden of taxation.  There is no competent evidence that this was the intent of the legislature, but, on the contrary, the evidence leads to the conclusion that it was their intention to limit the exemption to property of the town used for public purposes and situate within its limits.

In reaching this conclusion, the cases cited from other jurisdictions, as *Wayland* v. *Commissioners*, 4 Gray 500, *West Hartford* v. *Commissioners*, 44 Conn. 360, *Rochester* v. *Rush*, 80 N. Y. 302, and other cases, have not been overlooked.  Some of these decisions are based upon special statutes not applicable here, and some of them hold this kind of property exempt from taxation because it is used for public purposes.  But this decision does not necessarily conflict with those, for the reason that it depends upon the special provision of our statute.

*Petition dismissed.*

All concurred.