Merrimack, }
Dec., 1898. }

## NEW LONDON *v.* COLBY ACADEMY.

69   443
70   223

69   443
74   224
74   485
74   535
74   538
74   548

Under P. S., *c.* 55, *s.* 2, real estate owned by a seminary of learning is exempted from taxation only when it is used for school purposes.

ASSUMPSIT, to recover taxes assessed against the defendants for the years 1896 and 1897, upon certain real estate. Facts found by the court. The defendants were incorporated July 4, 1837, under the name of the New London Academy (changed to Colby Academy by *c.* 134, Laws 1878), with authority to establish " an institution in the town of New London . . . for the education and instruction of youth in useful knowledge," and to hold real and personal estate not exceeding $20,000 in value,— and not exceeding $4,000 in value of the real estate " actually in the use and solely for the benefit of said institution, [to be] free from taxation; *provided*, the town of New London consent to the exemption of said taxation." Laws 1837, Priv. Acts, *c.* 29. The amount of real and personal estate which the corporation was authorized to hold has been increased to $300,-000. Laws 1891, *c.* 236, *s.* 3. In 1838, the town voted " to free the New London Academy and the property belonging to it from taxation."

The real estate upon which the taxes in suit were assessed consisted of a lot of land with a house containing nineteen rooms, and barns and outbuildings upon the lot. From 1882, when it was given to the corporation, until 1893, it was occupied by the president of the institution. In the latter year, five rooms were fitted up for the use of students, and the house was called an " overflow dormitory." Prior to January, 1897, more or less of these rooms were occupied by students, who paid rent for them to the corporation. The other portions of the house were occupied by one of the defendants' professors, who made a reduction of $200 a year in his salary in consideration of such use. The defendants paid the professor one half of the sums received from students as rent, for heating and taking care of their rooms. The professor continued to occupy the house on the same terms after January, 1897. The real estate has been taxed to the defendants each year since 1882, and they have paid the taxes, excepting those for the year 1892 (which were abated) and those sought to be recovered in this action. It is of the value of about $2,800; and the corporation owns other real estate in New London, used for dormitories and school purposes, of the value of $15,000, which is not taxed.

*Streeter, Walker & Hollis,* for the plaintiffs.

*Sargent, Hollis & Niles,* for the defendants.

CHASE, J. The defendants' charter authorized an exemption from taxation of only $4,000 worth of real estate. The town had no authority to enlarge this exemption. Laws 1837, Priv. Acts, *c.* 29, *s.* 4; *Mack v. Jones*, 21 N. H. 393. Additional exemption is claimed under section 2, *c.* 55, P. S., which provides that "real estate . . . is liable to be taxed, except houses of public worship, twenty-five hundred dollars of the value of parsonages owned by religious societies and occupied by their pastors, schoolhouses, seminaries of learning, real estate of the United States, state, or town used for public purposes, and almshouses on county farms." The exception in this section, like the principal provision, refers to real estate. The particulars specified both before and after "seminaries of learning" are parcels or portions of real estate. A "seminary" is a place of education. Like "academy," the word has two meanings,— one referring to the institution and the other to the building in which the institution performs its functions. "Phillips Exeter Academy" may mean the institution having that name, or the building used by it for school purposes. And so may "New Hampshire Conference Seminary." The qualifying words, "of learning," were used in the statute to distinguish the real estate referred to from nurseries, etc. See Cent. Dict., "Seminaries." It is not the real estate of seminaries of learning that is excepted, but only "seminaries of learning"; that is to say, buildings used for school purposes. If the intent had been, as claimed by the defendants, to except all the real estate of such institutions, it is probable that the intent would have been more definitely expressed, especially in view of the fact that the other real estate excepted is described with definiteness. Portions of parsonages are excepted only when the parsonages are owned by religious societies and occupied by their pastors. Not all of the real estate of the United States, state, or town is excepted, but only such as is used for public purposes. It was no more necessary to specify the use to which buildings should be appropriated to bring them within the meaning of the description, "seminaries of learning," as used in the statute, than it was to specify such use in respect to "houses of public worship" or "schoolhouses." The words themselves imply the uses which entitle buildings to such designations. "Seminaries of learning," like "schoolhouses," are buildings appropriated for use by schools.

"Every member of the community has a right to be protected by it in the enjoyment of his life, liberty, and property. He is,

therefore, bound to contribute his share in the expense of such protection, and to yield his personal service, when necessary, or an equivalent." Bill of Rights, *art.* 12. By the constitution, full power and authority are granted to the general court " to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of and residents within the state, and upon all estates within the same." Const., *art.* 5. " No exclusion of any individuals, classes, or property of any kind was made; but it was explicitly set forth that ' every member of the community ' ' is bound to contribute his share,' and that the legislature had ' full power and authority ' to impose the ' proportional and reasonable assessments ' upon ' all the inhabitants and residents ' and ' all the estates ' within the state. Under such a grant of power every species of property within the state is taxable," — whether belonging to religious or educational institutions, or to business corporations, or individuals. *Franklin-Street Society* v. *Manchester*, 60 N. H. 342, 347. At the date of the adoption of the constitution, the leading, if not the only, institutions of learning outside the common schools were Dartmouth College and Phillips Exeter Academy. In 1780, a question arose in the legislature as to the taxation of lands that had been granted to the college, and it was enacted that no lands belonging to the college should be sold for taxes, provided the trustees seasonably gave notice to selectmen of what lands the college owned in their respective towns, and that the taxes for the present should be charged to the state. It was held in *Brewster* v. *Hough*, 10 N. H. 138, that this was intended only as a temporary provision and not as a permanent exemption from taxation; that the subsequent adoption of the constitution, and the passage of general laws under it for the assessment and collection of taxes, terminated the operation of the provision. The property of Phillips Exeter Academy, other than real estate exclusively and directly used for the purposes of the institution, was taxable under its charter. *Phillips Exeter Academy* v. *Exeter*, 58 N. H. 306. While the public policy of the state at the time of the adoption of the constitution was to cherish the interests of all seminaries of learning and public schools (Const., *art.* 82), it did not extend so far as to exempt all the property of such institutions from taxation. Such an exemption would so conflict with the policy of the state in respect to taxation generally, that words unmistakably conveying the idea would be necessary to convince one that the legislature intended it. The total value of property which the defendants and other similar institutions in the state are authorized to hold must be very large. The defendants alone are authorized to hold $300,000 worth. Exemption from taxation of the real estate of these institutions would be a great inducement to them to invest their funds in

local real estate. If they yielded to the inducement, an unequal burden of taxation would be thrown upon other property holders. The owners of other property would be obliged to provide for the protection of the property of the institutions and the maintenance of roads, schools, and other public accommodations for the use of their officers, servants, and students. It cannot be presumed that the legislature intended to aid such institutions to this extent.

There is other evidence bearing on the question of legislative intent. The exemption in the defendants' charter is limited to real estate " actually in the use and solely for the benefit of the institution." By chapter 50, Laws 1879, " all property, whether real or personal, owned by any church association or corporation, used exclusively for a place of worship, not exceeding $10,000," was exempted from taxation. By chapter 66, Laws 1895, so much of the property of charitable associations, corporations, and societies " as is devoted exclusively to the uses and purposes of public charity " is exempted. In these instances the legislature has made the exemption dependent upon the exclusive use of the property for the educational, religious, or charitable purposes of its owner. By the provisions of the statute under consideration, only such real estate of the United States, the state, or a town as is " used for public purposes " is exempted. In *Newport* v. *Unity*, 68 N. H. 587, it was held that real estate used for water-works, owned by a town and situated in an adjoining town, was not within this exception. The charter of the trustees of Phillips Exeter Academy contains a provision that " the lands, tenements, and personal estate that shall be given to the trustees for the use of the academy, shall be and hereby are forever exempted from all taxes whatsoever." In *Phillips Exeter Academy* v. *Exeter*, 58 N. H. 306, it was held that a building, used partly as a dormitory and students' boarding house and partly as a public house, was not exempted from taxation under this provision. In the course of the opinion the court say: " The use intended as a ground of exemption was exclusive. It was a direct use for the purposes of the academy. . . . Ownership was not to be the test of exemption; use was." It is true that this decision related to the construction of the academy's charter and not of the general law under consideration, but the terms of the charter were quite as broad in meaning as those of the general law. If the general law had been regarded as broader than the charter, the exemption would probably have been claimed under it. The general law was construed in *Warde* v. *Manchester*, 56 N. H. 508. In that case, it was found as a fact that the buildings on one of the lots, as to which exemption was claimed, were " used exclusively as an academy for day scholars, not boarders at the establishment," and that the buildings on the

other lot were " used for dormitories for the pupils and teachers and others, boarders or having their homes at the institution, and necessary and convenient outbuildings." In the opinion the court say, " this property is devoted exclusively to the purposes of a seminary of learning," showing that they regarded an exclusive use to be necessary to entitle the owner to exemption under the statute.

The buildings upon which the plaintiffs claim exemption were wholly used for revenue. The students paid rent for the rooms they occupied, and the professor paid rent indirectly for the rest of the property. It made no difference in fact whether the rent was paid in cash or by an offset for services rendered. They were not buildings described in the statute as " seminaries of learning," as those words were used by the legislature.

*Judgment for the plaintiffs.*

PARSONS, J., did not sit: the others concurred.