JOHN STILES, COLLECTOR OF TAXES, *v.* VILLAGE OF NEWPORT.

October Term, 1901.

Present: ROWELL, C. J., MUNSON, START, and WATSON, JJ.

Opinion filed January 7, 1904.

*Taxation—Municipal Corporations—Water System—Public Use—Exemption—Pipe Line—Real Property.*

A municipal corporation is, by implication, exempt from taxation; but this exemption extends only to property devoted to a public use.

There is a distinction in the meaning of the term "public use," as employed in the law of eminent domain, and in that of taxation.

When a municipal corporation has constructed, and has since maintained, a water system for fire protection and other municipal purposes, and also for the purpose of furnishing its inhabitants with water for domestic use for a certain compensation; the latter use of the water is not a mere incident of the former.

The furnishing water by a municipality to its inhabitants for domes-
    tic purposes, in consideration of a compensation which even.
    yields an incidental profit to the municipality, is a "public use,"·
    within the meaning of that term as used with reference to ex-·
    emptions from taxation.

A water system owned by a municipality, and used for fire protection·
    and other municipal purposes, and also to supply water to its.
    inhabitants for domestic purposes in consideration of a compensa-
    tion which yields an incidental profit to the municipality, even·
    though part of the system is within the territory of another
    municipality, is property devoted to a public use, and is exempt
    from taxation, both by implication, and by the seventh subdivision
    of V. S. 362.

A branch from its main water system, built by a municipality outside
    of its corporate limits, and devoted wholly to the needs of another
    village, and which can never be made available for its own
    municipal service, is not property devoted to a public use, and
    is not exempt from taxation.

The pipes and hydrants of a water system are real property.

ASSUMPSIT for the collection of taxes, commenced by
trustee process under V. S. 506. Plea, the general issue.
Trial by jury at the March Term, 1901, Orleans County,
*Tyler,* J., presiding. At the close of all the evidence, on mo-
tion of the defendant, a verdict was ordered, *pro forma,* for
the defendant to recover its costs. Judgment on verdict.
The plaintiff excepted.

Defendant's motion for a verdict was mainly upon the
ground that the property in question is by implication exempt
from taxation, and is expressly exempt under the seventh
subdivision of V. S. 362, as being property sequestered for
public uses.

The taxes for which this suit was brought were assessed
against the defendant in the years 1899, and 1900. On the
first day of April in each of those years, the defendant owned
a water system, a part of which, consisting of about five
miles of main pipe, besides branch lines, all buried in the

ground, and several hydrants, and land used for a reservoir, was situated in the town of Derby. It is upon this part of its system, situated in the town of Derby, that the taxes in question were assessed against the defendant.

Under the provisions of its charter, and in the exercise of the power of eminent domain, the defendant took water for this system from Derby Pond in the town of Derby, and constructed an aqueduct from said pond to the village of Newport. About five miles of the main line of this aqueduct was in the town of Derby. Very near the end of this five miles, the defendant, in the exercise of the power of eminent domain, condemned between one and two acres of land in the town of Derby, and thereon constructed a reservoir which it used as part of said system for storage purposes, and fenced the whole about with a tight board fence. At very near the end of this five miles of main line in the town of Derby is situate the village of West Derby, a village of about nine hundred inhabitants. At this point the defendant installed a branch system from its main line, all in the town of Derby; and from this branch system sold water to the inhabitants of West Derby for domestic use. The defendant also installed in this branch system sixteen hydrants for the use of which for fire protection the defendant received from the corporation, the village of West Derby, two hundred and forty dollars annually. There were also six hydrants in this branch system in the International mill yard in Derby, used for fire protection only, for which defendant received one hundred dollars annually. The total receipts of the defendant for all water furnished in the town of Derby from its system was about one thousand six hundred seventy-nine dollars annually.

That part of defendant's water system situated in the town of Derby was constructed as an extension of a system

which it already owned, which was inadequate, and no part of which was situate in the town of Derby. That part of this extension situated in the town of Derby, cost the defendant about fifty thousand dollars. The defendant had an outstanding bonded debt on account of this extension, of about forty thousand dollars.

The defendant also sold the water from this system to the inhabitants of the village of Newport for domestic purposes; and used the water for fire protection, for sprinkling the streets, for flushing the sewers, for supplying a public water trough, and for supplying the school house, in said village.

The defendant was also selling to one customer in the village of Newport water from said system sufficient to run a water motor of three or four horse power, which was used to operate the machinery in a printing office. The defendant also furnished water from said system to two churches in said village, without charge. One of these churches used a small water motor to pump its organ. No other water was furnished from said system for mechanical purposes, except that for five years previous to the year 1900, the defendant had furnished water from said system to the Boston & Maine Railroad Company for its engines and for fire protection and for drinking purposes, at its stations and buildings in the villages of Newport and West Derby, for three hundred dollars per year. In November, 1900, this arrangement was abandoned, on account of shortage in the water supply.

*J. W. Redmond, Seneca Haselton,* and *Josiah Grout* for the plaintiff.

All provisions of exemption from taxation are to be strictly construed. Cooley on Tax. p. 146; *Mayor* v. *Baltimore, etc. R. Co.,* 48 Am. Dec. 531. Municipal corporations

are not expressly exempt by V. S. 362, and such exemption cannot be implied because of V. S. 360. *Nimblet* v. *Chaffee,* 24 Vt. 628; *In Re Varnum,* 70 Vt. 147; *State* v. *Hartford,* 47 Am. Rep. 622; *State* v. *Collins,* 37 Atl. 623.

The property is not devoted to a public use within the meaning of exemptions from taxation. The use is a private one, for the immediate corporate benefit of the defendant. *Welsh* v. *Village of Rutland,* 56 Vt. 228; *Weller* v. *Burlington,* 60 Vt. 28; *Wilkins* v. *Rutland,* 61 Vt. 336; *Bates* v. *Rutland,* 62 Vt. 178; Tiedeman on Munic. Corp. §§ 9 & 10; *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509; Cooley on Taxation, p. 172. The village of Newport could just as well start a bakery in the village of Derby to supply good bread, and claim this devoted to a public use.

There is a distinction in the meaning of the term "public use" as employed in the law of taxation and in that of eminent domain. Cooley on Taxation, (1 Ed.) p. 80; Desty on Taxation, p. 25.

This property is therefore taxable. *Newport* v. *Unity,* 44 Atl. 704; *Negley* v. *City,* 4 Munic. Corp. Cases, 704; *Commonwealth* v. *Makebben,* 29 Am. St. Rep. 382; *Sanitary Dist. etc.* v. *Martin,* 64 Am. St. Rep. 110; *Louisville* v. *Commonwealth,* 85 Am. Dec. 624; *Essex County* v. *Salem,* 153 Mass. 141; *County of Erie* v. *City of Erie,* 6 Atl. 138; *University* v. *People,* 22 Am. Rep. 187; *Worcester* v. *Worcester,* 116 Mass. 193; *Newark* v. *Clinton,* 8 Atl. 296; *Camden* v. *Village,* 1 Atl. 689; *Toledo* v. *Hosler,* 10 Ohio Cir't Ct. 257; *People* v. *Amsterdam,* 157 N. Y. 42.

If this property is exempt, then towns can take all the real property from another town and force it to raise its taxes on personal property. An exemption is virtually an additional tax upon other property. The exemption of this property

in Derby for the benefit of Newport, is a tax upon the people of Derby for the benefit of the people of Newport, and is unconstitutional.  Cooley on Taxation p. 105.

The branch used to supply the village of West Derby is certainly not devoted to a public use.  This is a purely private business enterprise.  *Tyler* v. *Beacher,* 44 Vt. 548, *In Re Barre Water Co.* 72 Vt. 413.

The pipe line and hydrants are real property.  *Willard* v. *Pike,* 59 Vt. 223; *Inhabitants of Paris* v. *Norway, etc. Co.,* 35 Am. St. Rep. 371; *State* v. *Berry,* 52 N. J. L. 308; *People* v. *Martin,* 48 Hun. 193.

*Young & Young* for the defendant.

Municipalities cannot tax each other.  Each is independent of the other.  In this respect they are like nations.  Vattel's Law of Nations, p. 494; *Coe* v. *Erroll,* 116 U. S. 517; *Van Brocklin* v. *Anderson,* 117 U. S. 151-180.

Property of a municipality is by implication exempt from taxation.  *Buckley* v. *Osburn,* 8 Ohio 180; *Piper* v. *Singer,* 4 Serg. & R. 354; *Directors, etc.* v. *School Directors,* 42 Pa. 21; *People* v. *Doe,* 36 Cal. 220; *Worcester Co.* v. *Worcester,* 116 Mass. 193; *Trustees, etc.* v. *Taylor,* 30 N. J. Eq. 618; *Trustees, etc.* v. *Trenton,* Ibid. 667; *Rochester* v. *Rush,* 80 N. Y. 302; *State* v. *Hartford,* 50 Conn. 89; *Fagan* v. *Chicago,* 84 Ill. 227; *Inhabitants, etc.* v. *County Com'rs.* 4 Gray 500; *Doyle* v. *Austin,* 47 Cal. 353; *Summerville* v. *Waltham,* 170 Mass. 160; *People* v. *Solomon,* 51 Ill. 37, 52; *People* v. *Brooklyn Assessors,* 111 N. Y. 505; *Galveston, etc. Co.* v. *Galveston,* 63 Tex. 14; *West Hartford* v. *Hartford,* 44 Conn. 360; *Rex* v. *Inhabitants of Liverpool,* 14 E. C. L. 37; *King* v. *Trustee, etc.,* 14 E. C. L. 41; *King* v. *Commissioners, etc.,* 33 E. C. L. 239; *Queen* v. *Mayor, etc.,* 40 E. C. L. 12; *Queen*

*v. Shee,* 45 E. C. L. 1; *State* v. *Collins,* 37 Atl. 1097; *U. S. B. & O. R.,* 17 Wall. 322; *Merriweather* v. *Garrett,* 102 U. S. 472; *Smith* v. *Mayor, etc.,* 88 Tenn. 464, 7 L. R. A. 469; *People* v. *U. S.,* 34 Am. Rep. 155; *Kleien* v. *New Orleans,* 99 U. S. 150; *Sherwin* v. *Wigglesworth,* 129 Mass. 64.

This aqueduct is devoted to a public use. History shows that aqueducts have always been regarded as public institutions. 2 Enc. Brit., 222; 2 Curtis Hist. Greece, 388, (Scribner Ed.) 2 Mommsen's Hist. Rome, 85; 4 Ibid. 168, 169, 173.

The defendant acquired this property by the legitimate exercise of the right of eminent domain. But this right can be legitimately exercised only for a public use. Hence this property is devoted to a public use. *Snow* v. *Sandgate,* 66 Vt. 451; *In Re Barre Water Co.,* 62 Vt. 27; *Foster* v. *Bank,* 57 Vt. 128.

This property is equally exempt as devoted to a public use, whether situate within or without the corporate limits of the defendant. See cases above cited.

MUNSON, J. The defendant village is authorized to provide a supply of water for fire, domestic and other purposes, and to sell and furnish water for domestic and other purposes to persons or corporations within or without said village. No. 201, Acts 1878; No. 283, Acts 1894; No. 196, Acts 1898. A part of the defendant's water system, including its reservoir and aqueduct, lies in the town of Derby. The land for the reservoir was acquired under the right of eminent domain. The defendant uses the water for fire protection and other municipal purposes, supplies it to its inhabitants for domestic purposes at a certain compensation, and sells to one inhabitant enough to run a small motor for manufacturing purposes. The defendant also supplies the

village of West Derby, a manufacturing establishment located in that village, and two properties in the town of Derby outside the village limits, with water for fire protection, and the inhabitants of West Derby with water for domestic purposes; receiving compensation from all these sources. Defendant also supplied the Boston & Maine R. R. Co., at its yard in Derby, with water for its engines, for an agreed compensation, until November first, 1900. In 1899 and 1900 that part of the system located in the town of Derby was set to the defendant in the Derby grand list, and this suit is brought to recover the taxes assessed thereon. The defendant claims that the property is not taxable.

The only general provisions exempting property from taxation are those contained in V. S. 362. The first, seventh and ninth subdivisions of this section contain the only provisions that exempt property solely on the basis of ownership. The owners named in these provisions are the State, the United States, colleges, academies and other public schools, and cemetery associations. Other provisions exempt property because of the use to which it is put, and among these is the first clause of subdivision seven, which exempts property "granted, sequestered or used for public, pious or charitable uses." The defendant's claim of exemption is based upon two grounds; first, that the property of a municipal corporation is exempt by implication; second, that this property is devoted to a public use, and is therefore expressly exempted.

It will be noticed that as to some of the owners mentioned in section 362 the statute does not create the exemption, but merely declares it. The United States is exempt because of Federal supremacy. The State is exempt because of its sovereignty. Municipal corporations are not men-

tioned; but these are instrumentalities of the State, and the defendant contends that they are exempt, although not mentioned, the same as the State would have been.

But the plaintiff contends that any implication of this character that might otherwise have existed is cut off by the provision of section 360, that all real and personal estate shall, except as otherwise provided, be set in the list. It is argued further, that inasmuch as owners necessarily and impliedly exempt are included in the list named, the omission of municipal corporations is equivalent to a legislative declaration that the property of such corporations is taxable unless otherwise specially exempted. It is said that if the Legislature had intended that the property of municipal corporations should be exempt because of their relation to the State, it would have mentioned them in connection with the State.

These considerations alone will not suffice to deprive municipalities of any implied exemption to which they may otherwise be entitled. General statutory provisions like those referred to are treated as having reference only to such property as the law considers the subject of taxation. For instance, if the State had not been mentioned as exempt, the sweeping provision cited would certainly not have been held to require the taxation of its property. The most express language would be needed to overcome the presumption that the State does not tax itself. It is certain that there is also an implied exemption in favor of municipal corporations, but the extent of that exemption is open to inquiry.

It is doubtless true that the implied exemption in favor of the State is absolute and unlimited, but it by no means follows that the exemption in favor of municipal corporations is of equal scope. The municipality is an agent of the State, but it is often something more. It is frequently permitted to hold property for purposes which

are not within the scope of its governmental duties, but which are nevertheless recognized as conducive to the public welfare. This leaves room for the question whether the property of a municipal corporation is exempt from taxation because of such ownership and regardless of the use to which it is put.

It has been repeatedly said in general discussions that property owned by a municipal corporation cannot be taxed without express statutory authority; that the nature and purpose of taxation are such as preclude the idea of its being made a burden upon public property; and that tax laws will not be held applicable to municipal holdings unless the language positively requires it. These statements are doubtless made with reference to the general rule that a municipal corporation does not and cannot hold property except for public use. They certainly have failed to control when the courts have met with exceptional cases where the ownership was municipal and the use distinctly private. It will be well to refer to some of these cases, that we may guard against giving general statements of this character an undue effect in the further discussion.

In *West Hartford* v. *Com'rs. of Hartford,* 44 Conn. 360, one of the cases most relied upon by the defendant in support of its main contention, the city bought a larger tract than was needed for its reservoirs because it could trade most advantageously upon that basis, and the part not used for the reservoirs was held taxable. In *Inhabitants of Wayland* v. *Com'rs. of Middlesex,* 4 Gray 500, another case specially relied upon by the defendant, the municipality acquired the fee of the land needed for its aqueduct, and it was said with reference to this, that "if the land was valuable for and used for purposes other and distinct from those of the aqueduct, the property so used, to the extent it was so used, would be

liable to taxation." In *Essex County* v. *Salem*, 153 Mass. 141, it was held that land purchased by the county for the purpose of enlarging its jail and jail grounds, was subject to taxation while leased for private purposes and a source of income to the county. In *State* v. *Gaffney*, 34 N. J. L. 131, where land bought and property held for a city reservoir but not yet put to use was declared exempt, the court recognized the limitation of the right of exemption by distinguishing this from previous decisions, saying that in the case before it the land was being held for a necessary purpose, and without being used for any other purpose.

It is doubtless in recognition of this class of cases that most writers treat the rule as requiring not only municipal ownership but appropriation to a public use. We are satisfied that under the doctrine of implied exemption as applied to municipalities, the ultimate test is not municipal ownership but public use; so that this doctrine gives the defendant no greater right than it has by our statute, and the question whether the use is public will be controlling under either branch of its claim.

We have seen that the defendant's plant is designed and used to supply its inhabitants with water for domestic purposes; and our next inquiry is, whether this is a public use within the meaning of the laws relating to taxation. We have no cases bearing directly upon this question, and not many that will be specially helpful in its determination.

In *Middlebury College* v. *Cheney*, 1 Vt. 336, and in *Willard* v. *Pike*, 59 Vt. 202, 9 Atl. 907, there is some discussion of the question of public use as related to colleges and academies. The first case was ejectment for land in Albany which the defendant claimed under a tax title. The plaintiff contested this title upon two grounds: first, that the

college was authorized to hold lands of the yearly value of two thousand dollars free from taxation; second, that the land was non-taxable because sequestered for public, pious and charitable uses. The court sustained both contentions, saying with reference to the second that a conveyance for the use of the college was to a public use. In the second case cited, the validity of a list was contested because of the omission of certain buildings owned by the St. Johnsbury Academy, which were partly occupied by teachers and students and partly rented. The Court rejected certain authorities from other states on the ground that our statute differed from theirs in placing the exemption on the ground of ownership alone without mention of use; but considered that the building in question was held to a public and charitable use; and left undecided the question whether buildings acquired and held solely as an investment would be exempt.

Here the defendant is a municipal corporation, and its use of property is public in a different sense. Its functions are ordinarily such as justify the condemnation of whatever property may be necessary for their exercise. It is undoubtedly true that the furnishing of water to the inhabitants of a village for domestic purposes is a public use within the meaning of the law of eminent domain; and the defendant contends that this determines the character of the use as regards the right of taxation. This view is supported by *Inhabitants of Wayland* v. *Com'rs. of Middlesex,* above cited, but the weight of authority is against it; and Mr. Cooley considers it settled that the meaning of the term in the two uses is not the same. So this test will not be accepted as determinative.

On the other hand, the plaintiff says that the property would have been taxable in the hands of a private company which had acquired the right and was distributing the water

in the same way, and that this determines that it is taxable in the hands of the defendant. He insists that as regards undertakings which are not imposed upon the municipality but are voluntarily assumed and carried on for compensation, the municipality is to be treated the same as a private company, and that to hold otherwise would be inconsistent with the position we have taken in negligence cases.

It is true that in considering the liability of municipal corporations for their negligent acts, a distinction is made between acts done in the performance of their governmental duty as agents of the State and those voluntarily undertaken for corporate gain as well as for the public good. *Welsh* v. *Village of Rutland,* 56 Vt. 228; *Weller* v. *Burlington,* 60 Vt. 28, 12 Atl. 215; *Wilkins* v. *Rutland,* 61 Vt. 336, 17 Atl. 735; *Bates* v. *Rutland,* 62 Vt. 178, 20 Atl. 278; *Buchanan* v. *Barre,* 66 Vt. 129, 28 Atl. 878. These cases certainly determine that the use is private as distinguished from municipal, but they cannot be taken as a conclusive determination that the use is private within the meaning of the laws relating to taxation.

In supplying water for domestic purposes, the municipality is acting both for the public good and for corporate gain. Serving this double purpose, the property may be subjected to liability as private, or protected from liability as public, according to the nature of the demand. The individual suffering from negligence, and the municipality seeking revenue, approach the question upon different lines. When the municipal owner disputes the right of its sister municipality to tax the system, it is no answer to say that the use is so far private as to permit a recovery of compensatory damages. In *Com.* v. *McKibben,* 90 Ky. 384, 29 Am. St. 382, the reasoning of the New York court in the negligence case of *Bailey* v. *The Mayor of New York,* 3 Hill, 531, 38 Am. Dec. 669, was re-

lied upon as applicable and controlling upon the question of taxation.    But this cannot be the prevailing view, for generally the courts permit a recovery of damages upon the dual theory, and yet deny the right of taxation.    We conclude, therefore, that the question before us is not disposed of by the position taken in our cases above cited.

In this case, as in cases generally, the water is supplied for domestic purposes in connection with a provision for fire and other municipal purposes; and the defendant contends that, whatever the holding might be in the case of a system devoted wholly to domestic use, this additional use of a system required for the performance of a municipal duty will not subject the property to taxation.    It is said that the main purpose of the system is to meet the needs of the municipality, and that its use for domestic purposes is only incidental to the municipal use.    It is true that the work of distribution is done in connection with the performance of strictly municipal duties, and in part by way of a more complete utilization of a strictly municipal expenditure. · But it is clear that the use is not incidental in the sense in which the term is applied to the supplying of water for manufacturing purposes from a surplus properly taken but not needed for present use.    The authorization combines the two uses, and the works are designed and constructed, and the supply secured, with reference to both.    There is no contemplation of a time when the supplying of domestic needs shall cease because of the increased demand for other purposes.    The use for domestic purposes is treated as incidental in *State* v. *Conover,* 42 Atl. 838, (N. J. L.), but we are not content to rest the decision upon this ground.

So the question recurs, whether the supplying of water for domestic purposes to the inhabitants of the municipality

is in itself a public use within the meaning of the term as used with reference to taxation. It is said by Mr. Cooley that in the case of property held to supply such needs as are commonly supplied by a private corporation, such as water or gas works, the presumption of an intention to exempt from taxation would be very slight and perhaps would not arise at all. Cases from Kentucky are referred to in this connection. The constitution of Kentucky exempts "public property used for public purposes." In that state "public purposes" is held to mean the same as "governmental purposes," and municipal water works used in part for the supply of the inhabitants have always been regarded as taxable. *Covington* v. *Kentucky,* 173 U. S. 231, is referred to by plaintiff as sustaining this view, but it cannot be given that effect, for the Court was careful to say that it was bound by the construction given by the Supreme Court of Kentucky to the constitution of that state, however much it might doubt the soundness of any interpretation which implied that lands and buildings owned and used by a municipal corporation under legislative authority for the purpose of supplying that corporation and its people with water, were not public property used for public purposes. In several states, municipal water-works, devoted to the usual purposes, have been held exempt by implication, on the ground of public use, without any distinction being made between the different purposes. The case most exactly in point, and freest from other matters that might be supposed to have influenced the decision, is *West Hartford* v. *Com'rs. of Hartford,* already referred to.

The acts under which water-works have been provided by municipal corporations have almost invariably authorized a provision for fire, sanitary and domestic purposes. This grouping of uses is evidently in recognition of general needs

which cannot be fully met by individual effort. The first two have always been regarded as public uses, while the last has often been denominated private. But this last is not without some of the elements of public use that pertain to the other two. Both the provision for subduing fire and that for household use are designed to promote the municipal good through the benefit conferred upon private interests. The municipality itself seldom owns many buildings to be protected from fire or supplied with water. In these two purposes we are dealing with public use in a different sense from that applicable to public property as necessary to the exercise of governmental functions. The municipality has no other material basis than the property and health of its inhabitants, and in taking measures for the protection of either it is serving a municipal interest. The provision for sanitary purposes is ordinarily treated as having reference to the cleansing of streets and the flushing of sewers. This use is public in a closer signification than either of the others, for the streets are in a sense municipal property and their maintenance an imperative governmental duty. But even this use, viewed as it is designated, looks rather to the preservation of health than to the care of property. Sanitary measures are those designed to promote and preserve health. The supply for domestic purposes comes partly within this provision, for the household use is in part sanitary. It would be idle to distinguish in classification between the water used in the closet and the same water after it reaches the sewer. But this does not exhaust the sanitary aspect of the supply for domestic purposes. The requirement for fire protection and street and closet use is that there be an abundant supply. The requirement for drinking and culinary purposes is that the supply be pure and wholesome. This element of purity also serves a sanitary purpose of the highest order. Without a supply of

this character the public health would be in constant danger. These various uses are so interwoven in their relations to the municipality that it is difficult to say that one is public and the other private; and when all are served through the same system it is difficult to say that one is incidental to the other in any other sense than that the common supply is available for either use according as the demand is made. But we think no violence is done to reason in holding that the furnishing of water by a municipality to its inhabitants for domestic purposes is a public use within the meaning of the term as used with reference to exemptions.

The question of public use may be tested in another way. Taxes can be levied only for public purposes. We take it that a tax levied to establish and operate this system would not be made invalid by the fact that the plant was designed to meet both domestic and municipal needs. Then the supply of domestic needs is a public use within the meaning of the laws relating to the imposition of taxes, and if so, it may properly be regarded a public use within the rules relating to exemptions.

The use being public in its nature, the taking of compensation does not require that it be otherwise treated. The manner of distribution and the difference in individual requirements are such as make the imposition of rates advisable, and the fact that the expense is thus apportioned according to the use, instead of being provided for by taxes levied equally upon all, does not make it any the less a public use. The charge is in the nature of a special assessment graduated to the benefit received.

The fact that an incidental profit may accrue to the municipality and that this may in time become available for the payment of general corporate expenses, will not subject the system to taxation as serving a private use. The use will re-

main public notwithstanding this incidental result of the scheme of compensation, and if the working of that scheme is not what it should be, the regulation of municipal affairs is always in the hands of the Legislature.

But the plaintiff contends that this implied exemption of municipal property appropriated to public uses, does not apply to property located without the territorial limits of the municipality. It is said that an application of the rule that would lessen the taxable property of one municipality for the benefit of another cannot have been intended; and *Newport* v. *Unity,* 68 N. H., 587, 44 Atl. 704, is cited in support of this view. The facts of that case were such as would make the decision applicable here, but the conclusion of the Court seems to have resulted somewhat from a consideration of various statutory provisions. But whatever effect this case may be entitled to, it is certain that there are well considered decisions to the contrary. It has been distinctly held in several states, and we think upon sufficient grounds, that municipal property put to public use, even though located in another municipality, is not taxable, unless the Legislature so enacts. Among the cases so holding are *People* v. *Assessors of Brooklyn,* 111 N. Y. 505; *Somerville* v. *Waltham,* 170 Mass. 160.

It remains to consider whether the conclusions previously reached regarding the use of the system in the defendant village are applicable to the action of the defendant in furnishing water to the village of West Derby and its inhabitants. The municipal duty of the village of Newport as regards the maintenance of mains and hydrants is confined to its territorial limits. The municipal relation which enters into the question of domestic supply is confined to its own inhabitants. The furnishing of water to the inhabitants of the defendant village is held to be a public use upon the ground that the

making of such a provision, while not strictly a municipal duty, is protective of the public health, and therefore a public use within the meaning of the laws relating to taxation. But this reasoning fails when the furnishing of water to the village of West Derby is in question. We see no ground upon which the West Derby branch of this system can be held to be devoted to a public use, either as regards fire protection or domestic needs. The village of Newport owes no municipal duty to the village of West Derby or its inhabitants, and has no municipal interest there. Its sale of water to that village and its inhabitants is for the revenue obtainable thereby, independent of any connection with municipal duty or interest. Although disposed of for the same purposes, the sale cannot be regarded as a public use, because of this want of municipal relation.

It appears, then, that the defendant is the owner of property in the town of Derby, a part of which is devoted to private uses; and we have already seen that municipal property may be subjected to taxation by being put to a private use. It is not necessary to determine here what the rights of taxation may be as regards property put to both public and private uses. We cannot say upon the case before us that the reservoir and aqueduct are larger than might properly be provided for the village of Newport, having reference to its prospective needs; and any further benefit that might properly be derived from them would be treated as incidental. So these could not be listed for taxation upon any basis.

This may suggest the further question, whether the defendant's supplying of water to the village of West Derby for municipal and domestic purposes, although in itself a private use, should not be treated as an incidental use of a surplus properly provided, and so be classed as a public use. The

question is not the same that would have been presented if the West Derby system had been in existence, and the action of Newport village had been confined to a sale of its surplus water. Here, the village of Newport has built and installed a branch outside its corporate limits, which is devoted wholly to the needs of another village, and can never be made available for its own municipal service; and the question is whether the property so created and circumstanced shall be treated as serving an incidental and therefore a public use. It might not be easy to frame a safe and acceptable definition of an incidental use, but we think it may safely be said that the supplying of the municipal and domestic needs of another municipality through a complete system of distributing pipes and hydrants created for that purpose, is not such a use. The plaintiff has assessed the hydrants located in Derby, and we hold that they are taxable.

The property is listed as real estate, and the defendant claims that it is personal property. It was held in *Willard* v. *Pike,* 59 Vt. 202, 9 Atl. 907, that the iron pipe in which water was brought from the springs to the reservoir, partly in the highway and partly in fields of various owners, was real estate. Following this case, we hold that the hydrants were properly classed. The decision referred to was made without discussion, but was in accord with a number of well reasoned cases.

NOTE. This case was heard by all the Judges qualified to sit. The above opinion was made public at the October Term, 1902, but without entry of judgment, the Court being unable to agree upon a minor point touching the validity of the list. No agreement upon that point having been reached at the October Term, 1903, a reargument of it was ordered for the January Term, 1904. Counsel thereupon waived a reargument, and agreed upon an entry disposing of the case.