Coös,  
March 1, 1921.

## WHITEFIELD *v.* DALTON.

A deed by a lower to an upper riparian proprietor, granting the right to deposit waste from a tannery, confers the right to act toward the land in this regard as though the property were that of the upper owner and such right is taxable.

Though towns have only such powers as have been conferred by the state, extra-territorial real estate, the title to which is held by a town in excess of its corporate powers, is subject to taxation.

Sewage rights held by a town in such real estate are likewise taxable, if the town has not adopted the provisions of P. S., *c.* 79, authorizing the construction of sewers.

The right to tax is determined by the facts as they existed when the tax was laid.

PETITION, for the abatement of taxes.    After the decision in *Bernard v. Company*, 78 N. H. 418, the verdicts were paid by the Whitefield Tanning company, the town of Whitefield and the state of New Hampshire under Laws 1917, chapter 218.    When the settlement was made, Whitefield took quitclaim deeds releasing it from liability for all damages to date, as well as what might be occasioned by the future use of the tannery.    The rights were conveyed in the following language:

"The right to forever operate and conduct a tannery in the town of Whitefield where a tannery is now located, whether the same be operated by said town or its lessees, successors or assigns, and whether said tannery may be hereafter enlarged or rebuilt, together with the right to deposit the waste from said tannery into the Johns River which flows through said town and which is contiguous to land owned by us in said town of Dalton together with the further right for said town to conduct all sewage from said town into said river as it is now or may hereafter be conducted.    And we hereby covenant and agree, for ourselves, our heirs, administrators, successors and assigns, that we will make no claim for damages, either past, present or future, by reason of the operation and conduct of a tannery as aforesaid, or the deposit of waste and sewage as aforesaid."

Whitefield built and owns the tannery, but has never operated it, and since its erection has leased it to various parties for a nominal sum in order that the business should be carried on in town.

The defendant has assessed a tax on the rights acquired by Whitefield, from which the plaintiff appeals on the ground that such rights are not legally taxable and because the assessment made by the defendant town is unequal and disproportional to the assessment made upon other property in Dalton.

If upon these facts such rights are not taxable, the plaintiff is to have judgment; otherwise the remaining questions raised by the plaintiff's appeal are to be determined in the superior court. Transferred from the April term, 1920, of the superior court by *Kivel*, C. J.

*Edgar M. Bowker* and *Sullivan & Daley* (*Mr. Bowker* and *Mr. Sullivan* orally), for the plaintiff.

*Drew, Shurtleff, Morris & Oakes* (*Mr. Oakes* orally), for the defendant.

PEASLEE, J. The deeds to the town of Whitefield purport to convey certain rights as to the future use of the grantors' lands. They are more than mere releases of claims for damages caused by past acts. The conveyance of the right "to forever operate and conduct a tannery," even though it be "hereafter enlarged or rebuilt," so plainly covers future action that argument of the question is unnecessary. So too as to the deposit of sewage "as it is now or may hereafter be conducted," there is the use of apt language to create an easement. The attempt was to convey to Whitefield all the right the grantors would have to use the Johns River or their adjacent lands for these purposes. There being a dispute as to the lawfulness of the upper proprietor's acts as they affected owners lower down the stream, the upper owner undertook to buy from the lower ones a part of the use of their farms. This would ordinarily transfer the right to deposit waste to the extent that it could lawfully be done by one who owned the fee. It is not a license to intentionally or negligently spread disease germs; but (if otherwise valid) it confers the right to act toward the land, in these matters, as though it were the actor's own property as distinguished from the property of his neighbor. Such a right is taxable property. *Winnipiseogee Lake, &c. Co.* v. *Gilford*, 64 N. H. 337; *Amoskeag Mfg. Co.* v. *Concord*, 66 N. H. 562.

It is also urged as an objection to the tax that the act of Whitefield in making such a purchase was *ultra vires* and void. Towns have only such powers as have been conferred upon them by the state. *Wooster* v. *Plymouth*, 62 N. H. 193. It is not claimed that any authority exists for Whitefield to embark in the tanning business, or to erect and lease to others a building designed for such use. All its acts in this behalf are beyond the powers granted to it. As to the question of sewage, it does not appear that Whitefield ever adopted the provisions of chapter 79 of the Public Statutes. If it has not, it

has no power to build or maintain a sewer system.  *Granite State Land Co.* v. *Hampton*, 76 N. H. 1.

In answer to this situation it is said that Whitefield cannot claim the benefit of its unauthorized attempt to purchase rights in real estate in Dalton, and at the same time escape the payment of taxes upon such rights under the plea that the purchase was *ultra vires*. So far as appears, Whitefield has never attempted to exercise the rights described in the deeds. In the argument here it disclaims ever making any contract to purchase such rights, and it asks for leave to take appropriate proceedings to correct the deeds so that they will be merely releases for damage caused by past acts.

The right to tax is determined by the facts as they existed when the tax was laid. At that time Whitefield was holding the title in question, and cannot escape the ordinary incidents attaching to such action upon the plea that it was *ultra vires*. *Manchester Street Railway* v. *Williams*, 71 N. H. 312, 321, and cases cited.

Whether, if Whitefield takes the proceedings it has suggested and hereafter divests itself of the record title, it will have a lien upon the property or a claim against the owners for the tax assessed against it while holding the title (P. S., c. 56, s. 30; *Bellows Falls, &c Co.* v. *Walpole*, 76 N. H. 384), is a question not now presented.

Even if the real estate lawfully held by a town for a public use were non-taxable though located in another town, the principle involved would not apply to extra-territorial estate the title to which was held by a town in excess of its corporate powers. As to such property the town cannot claim through its municipal rights, for the reason that it does not hold title under such rights. Being the mere holder of the title it is subject to taxation. The statutory provision that "Real estate . . . is liable to be taxed, except . . . real estate of the . . . town used for public purposes" (P. S., c. 55, s. 2), does not admit a construction which would include the rights conveyed to Whitefield in the excepted class. It is only real estate that is "used for public purposes" that is non-taxable. *New London* v. *Colby Academy*, 69 N. H. 443, 446. Not holding the title by virtue of any municipal or public function, the town cannot claim an exemption, or status of non-taxability, which exists (if at all) solely as an incident to the exercise of such function. It is therefore unnecessary to re-examine the question discussed in *Newport* v. *Unity*, 68 N. H. 587, and *Canaan* v. *District*, 74 N. H. 517. If the deeds convey to the town sewage rights disconnected from the tannery business, the town is not now exercising such right. Upon the case as it stands, the

town does not appear to have the power to maintain sewers; and it is not necessary to consider whether such a right is public or private within the meaning of the exemption statute.

The rights conveyed to Whitefield were taxable. In accordance with the terms of the transfer to this court, the case will stand for trial upon the facts as to such other questions as the appeal presents.

*Case discharged.*

PARSONS, C. J., and PLUMMER, J., concurred.

YOUNG, J., *dissenting.* Whitefield purchased the right, among others, to deposit sewage on land in Dalton, and the court holds, as I understand the opinion, that this right is taxable because Whitefield is not exercising it, even though Whitefield was acting in its public capacity when it acquired that right. In other words, the court holds that Whitefield's right to deposit sewage on this land is taxable because it has no sewers. I think that land a town uses for a public purpose is not taxable even though it is in another town unless there is a statute authorizing the town to tax it. Now in this case what Whitefield owns is not land in Dalton but the right to deposit sewage on land in that town and, if that right would not be taxable if Whitefield were exercising it, I cannot understand why the fact Whitefield is not exercising it renders it taxable, for what Whitefield owns and all it owns is the right to use the land for a public purpose.