SEARSBURGH TURNPIKE Co. *vs.* RUEL CUTLER.

BENNINGTON,
*February*,
1834.

In a suit by a corporation, it is no valid objection to the jurisdiction of the justice, that he is related to a corporator and stockholder.

In a suit by a corporation against a stranger, for a tort or trespass upon the plaintiff's property, it is sufficient to prove the corporate existence, to produce the charter, and shew that the corporation exists *de facto*. It is not necessary to produce their records.

If there be an irregularity or defect in such record, the corporation is not thereby dissolved.

This suit was originally commenced before a single magistrate, and carried by appeal to the county court. It was an action of trespass on the case, for attempting by force to pass, and for breaking down and passing a turnpike gate belonging to said company.

The defendant plead before the justice to the jurisdiction of the court, that said justice was related within the fourth degree of affinity to one of the corporators and stockholders. Upon demurrer this plea was overruled, and a *respondeas ouster* awarded.

The plaintiff read in evidence the charter of the company, dated 28th October, 1828, and an act in addition thereto, passed November 1, 1831. He then offered the survey of the road in November, 1831, and the acceptance of the judges of the county court, and that gates were erected thereon and sign boards put up, agreeably to the directions of the act.

To this evidence the defendant objected as inadmissible until the plaintiff had shown the organization of the Searsburgh Turnpike Company under the act. The court overruled the objection, and admitted the evidence.

The plaintiff then read the survey of the road, and acceptance of the same, on the 17th October, 1832, and introduced testimony to prove the erection of the gates and sign-boards, and that defendant forcibly passed the gate, without paying toll, although it was demanded of him by the toll-gatherer; and that the gate was erected east of the dwelling-house of Joseph C. Hollister, in Woodford.

Evidence was given tending to show, that where the defendant lived, there had been an old road—that he lived the next house east of the gate, and about a mile from it.—That at the time he passed the gate, he had been to Bennington, and said he had in his waggon a barrel of pork and some molasses.

BENNINGTON,
February,
1834.

Searsburgh
Turnpike Co.
vs.
Cutler.

The defendant contended that the legislature had no right to grant a turnpike on an old road, and that he was not liable to pay toll.

The court charged the jury that the legislature *had* a right to grant a turnpike over an old road, and that defendant was liable to pay toll notwithstanding he lived so near the gate, and notwithstanding he had been to Bennington and returned with the articles in his waggon before mentioned.

The defendant excepted to the decision of the court, on the plea in abatement, and to their charge to the jury, and a verdict having passed for the plaintiff, the cause comes here upon the exceptions which were allowed and certified.

*S. H. Blackmer for defendant.*—1st. It is provided by the statute, that a justice of the peace shall not try a cause where he is related either in the first, second, third or fourth degree, by affinity or consanguinity, to either of the parties.—Rev. Stat. 131. The owners of stock in a private corporation have the same interest as it regards the question, that partners have in their property. Suppose that Mr. Kellogg owned the whole stock in the Searsburgh Turnpike Co., could his father try a case in favor or against said Co.? It is true the statute gives to the company privileges which do not belong to common partnerships; and one is, the privilege of being sued or suing, without stating the names of all interested. But where is the real difference between suing in one name or another? The one in interest, is the real party. A turnpike corporation is a private corporation, and the members are all beneficially interested.—2 Kent's Com. 275. A public corporation is created for political purposes, as counties, towns, &c., and the whole interest in them belongs to the public.—2 Kent's Com. 275. And a person may have property individually in public, but cannot in private corporations. If a corporation bring any action that concerns their body, if the juror be of kindred to any of that body, (although the corporation can have no kindred) yet because those bodies consist of natural persons, it is a principal challenge.—1 Coke upon Litt. 157. Now it may be said that this rule applies to jurors only, and not to the court; but I believe in England, all questions of fact are tried by a jury, and never by the court; and so they are in this state, unless the parties agree to be tried by the court. There would not

be that danger that a court would be prejudiced on a question of law, that there would on a question of fact. The reason that justices may not try cases where they are related to the parties is, that they may labor under an influence that will cause them to do injustice.—2 D. Chip. 96, *Bates* vs. *Thompson*. And the amount of the interest makes no difference. Members of public corporations have only a corporate interest; but members of a private corporation have a personal interest.—Swift. Ev. 57.

BENNINGTON,
*February,*
1834.

Scarsburgh
Turnpike Co.
*vs.*
Cutler.

2d. The corporation ought to have shown that they organized according to law. The rule is, that when a corporation sues, they must, on the trial under the general issue, show they are a corporation.—8 John. R. 295, *Jackson* vs. *Plumb*. Can they be considered a corporation before they have organized, and done every act required by law to give them a legal existence? In the declaration they need not show how they were incorporated, but under the general issue, pleaded by the defendant, they must show they are a corporation.—14 John. R. 238, *Dutchess Manufacturing Co.* vs. *Davis*.

The same rule is adopted in relation to private corporations: that is, adopted as to courts of inferior jurisdiction. Their organization under the laws which authorise their proceedings, cannot be known judicially until proved.—1 Vt. R. 81, *Bates* vs. *Hazeltine et al.* Any matter of defence which denies what the plaintiff, on the general issue, would be bound to prove, ought to be given in evidence under the general issue.—19. John. R. 300, *Bank of Auburn* vs. *Weed*. Therefore, if defendants had plead that they were not a corporation specially, it would have been bad on special demurrer.—19 John. R. 300, *Bank of Auburn* vs. *Weed*.

*Mr. Isham for plaintiff.*—1. The relationship of the justice to a member of the corporation, does not preclude his entertaining jurisdiction of the suit. At common law, relationship even to the party on the record, forms no objection to the justice trying the case.—Co. Litt. 294.—3 Bl. Com. 361.—13 John. R. 191.—17 John. R. 133.—19 John. R. 172. And the statute (Comp. Laws, page 131) disqualifies a justice only when related to "either of the parties" within the fourth degree. A member of the corporation is in no sense a party in this case; for he has neither the rights and privileges, nor the

BENNINGTON,
February,
1834.

Searsburgh
Turnpike Co.
vs.
Cutler.

powers of a party on the record, or in interest. The party is the Searsburgh Turnpike Company, to which these belong inasmuch as in the exercise of a corporate power a member is not known, but the corporation only.—Jac. Law Dic. Tit. Cor.— Peak's Nisi Prius, case 153.—Swift. Dig. 71. A corporation may sue one of its members.—Jac. Law Dic. Tit. Cor.—2 Vt. R. 393.—3 Mass. R. 364. A corporation may be sued by a member.—Jac. Law Dic. Tit. Cor. 97.

A member cannot commence, control, or discharge a suit of the corporation.—1 Swift Dig. 71—neither are his declarations admissible for or against the corporation.—1 Swift. Dig. 71.— 3 Day's Rep. 493.—1 Phil. Ev. 74, note.—3 Stark. Ev. 1062—nor does his death abate the suit.—2 Kent's Com. 267. And further, a member in his individual capacity is subject to no liabilities on account of the suit.

If a member be not a party to the suit, his interest in the corporate stock does not disqualify the justice to try the case.

2. The plaintiff was not bound to introduce the records of the corporation to show an organization under the act: if they had been offered, they would have been rejected as not affording evidence of any fact against the defendant, a stranger; but simply between the members.—6 Phil. Ev. 319.—1 Stark. Ev. 298.—1 H. Bl. 214.—3 John. R. 226. The existence of the corporation was shown by the charter, and from the making the road, and the exercise of other corporate powers : the organization will be presumed against a stranger, for he has no right to inquire into a non-user of the powers of the corporation in an action against himself.—2 Kent's Com. 312.—6 Cowan's Rep. 23.—1 Hall's N. Y. Rep. 191.—16 Mass. R. 94.

Again : The objection is not to the merits of the action, but to the disability of the plaintiff to sue, which could have been taken advantage of only by a plea in abatement.—1 Chitty on Pl. 386.—2 Phil. Ev. 289, 292.—1 Vt. R. 151.—1 Mass. R. 485.—11 Mass. R. 314. The neglect to organize could only have suspended the right of action ; for the words of the statute fixing a time and place are merely directory, and the company might have organized at a time different from that mentioned in it.—2 Kent's Com. 295. By pleading the general issue, the ability of the plaintiff to sue is admitted.—1 Chitty on Pl. 379.—1 Mass. R. 485.

3. The legislature had a right to authorize the company to make the turnpike on an old road. A public highway is an easement belonging to the state.—1 Swift. Dig. 106.—2 N. H. R. 22.—2 Mass. R. 146.—10 John. R. 389: The legislature then may control the making, altering, and discontinuing of it.—2 N. H. R. 22. The power of towns over highways is given by the legislature, and the giving of this power and their obligation to repair, &c. highways, confers no right but what is subject to the control of the legislature; or, in other words, the state.—2 N. H. R. 22. The legislature has ever exercised this paramount right.—Comp. Laws, page 439, no. 7, sec. 2—p. 443, no. 12, sec. 1.—Stat. 1825, p. 23, sec. 14. And if the legislature, by general laws, can control highways *a fortiori*, it may give a corporation the power contended for in this case: It may grant the easement to a corporation.—1 Swift. Dig. 106.—2 N. H. R. 22; or rather the right to receive toll for making the road, which is but another way of taxing the inhabitants for making highways.—1 Bl. Com. 359. By so doing, all obligation on the towns through which the road may pass, with regard to the road, is taken from them, and imposed on the corporation.—2 N. H. R. 22. But when the grant is repealed, the easement revests in the state, and becomes a public highway.—1 Aik. R. 223.

The opinion of the court was delivered by

PHELPS, J.—The first question, in the order of this case, arises upon the plea in abatement. That plea sets up an objection to the jurisdiction of the justice's court, and of course to the appellate jurisdiction of the county court, founded upon the supposed incompetency of the justice, before whom the action was originally brought, to judge between these parties. The plea alleges, that J. H., the justice, is related within the second degree of affinity to one H. K., who is a member of the Searsburgh Turnpike Company, and the owner of a portion of the stock of said company.

This plea is founded upon the statute law of the state, which provides, that a justice of the peace shall not take cognizance of a case, where he is related within the fourth degree, either by affinity, or consanguinity, to either of the parties.

The question then is, simply whether the justice·is related within the fourth degree to either of these parties. That he is related to H. K., and that H. K. is a member and stockholder

BENNINGTON,
*February*,
1834.

Searsburgh
Turnpike Co.
*vs.*
Cutler.

BENNINGTON, February, 1834.

Searsburgh Turnpike Co. vs. Cutler.

of the corporation, is admitted by the demurrer. That H. K. is interested consequently in the suit, and to be affected by the result, must be admitted as a necessary consequence. But there is no prohibition in the statute, as to justices related to persons, not parties to the suit, who may have an interest in its issue. There is certainly no such prohibition in the common law, no such ground of exception to the jurisdiction, to be found in the books. The defendant therefore derives no aid from any pre-existing rule of the common law, in favor of the construction of the statute for which he contends.

Is then H. K., in a legal sense, a party to this suit? This question may well be answered by asking others: Can he discharge it? Is he entitled to receive the amount of the judgment, should one be obtained, and would his receipt therefor protect the defendant? Is he liable for costs? Could an execution for costs be levied of his property? All these questions must be answered in the negative. How then is he a party? In no sense, certainly, unless a remote and consequential interest makes him such. To hold that such would be the effect of such an interest, would be to confound all distinctions. The corporation in its corporate capacity is plaintiff, and not the individual stockholders in their individual capacity. A stockholder, as such, can neither control nor discharge the suit, nor indeed exercise any power over it more than a stranger. Some decisions in Massachusetts may have led to misapprehension on this point. The courts of that state have indeed held, that the individual inhabitants of a town are parties to a suit in behalf of the town. This is probably upon the ground, that by their statute, as by ours, an execution against a town may be levied of the goods and chattels of any inhabitant. But whatever may be the ground of those decisions, they have never applied the principle to private corporations, as banks, and other joint stock companies. They have ever held, that a sheriff, who was a stockholder in a bank, could legally serve an attachment in favor of the corporation, holding that he was neither a party, nor, in a legal sense, interested. So far therefore as the question relates to private corporations, the decisions in that state are in favor of the plaintiff.

The courts of that state have also held, that upon common law principles, a judge who is interested, or a party in a suit, is incompetent to adjudicate upon it. And they have carried the

BENNINGTON,
February,
1834.

Searsburgh
Turnpike Co.
vs.
Cutler.

doctrine to an extent which could not be adopted here without impeding the course of justice. Holding with respect to political corporations, that the individual inhabitants are parties, they have even denied the competency of the judges of the county courts to adjudicate upon a suit in behalf of the county. If this doctrine is sound as applied to counties, it is not easy to discover any reason why it does not apply to the state at large, and to its highest judicial tribunals. Upon this ground, the jurisdiction exercised by the supreme and county courts over suits upon bonds, recognizances, &c., either directly or in the name of the state, or in that of the treasurer as trustee, must be abandoned as illegal. And if we add to this the principle of our judiciary act, that no judge shall take cognizance where he is interested, we suspend at once all criminal jurisprudence, in cases where the penalty is, either in whole or in part, a pecuniary mulct to be paid into the state or county treasury, and where the costs of prosecution are charged upon the same.— To apply the doctrine to this case, however, we must proceed one step farther in absurdity, and hold that a magistrate could act in a suit, either for or against a town or county corporation, who was related to any of its inhabitants, or where the state was prosecutor or plaintiff, if he had a relative within the fourth degree within it. Whether the doctrine of those courts be correct or not, there is certainly no propriety in extending it to the length contended for. The true principle seems to be this: Where the judge is himself interested, he is in general certainly incompetent to act as such; but even here the plea in abatement should give the plaintiff a better writ; in other words, there should be some person who is competent; and where the interest of the judge sinks into that minute and remote interest which is possessed equally and alike by all the citizens of the state, the objection must *ex necessitate rei* fail.

In suits in behalf of a corporation, either public or private, the individual members, it would seem, are rather interested than technically parties.. And although it may be correct to treat them as parties to certain purposes, yet it certainly would not be so, to consider them as parties in the most comprehensive sense, to every purpose, and with all the consequences which would legally flow from it.

Further, H. K. may legally sue the corporation or be sued by it. This of itself shews that the interest of the corporation

BENNINGTON,
February,
1834.

Searsburgh
Turnpike Co.
vs.
Cutler.

and that of an individual member are not identical. We are therefore of opinion, that H. K. is not strictly a party to this suit, and that the plea in abatement is not sustained by the terms of the statute.

It is argued however, that this case comes within the spirit of the statute, if not within its letter. But it requires something more than legitimate construction to interpolate the words " or persons in interest" into this statute. It would be adding to its provisions. The statute confines the disability to the relatives of the parties: mere interpretation can carry it no farther. To extend it to relations of those having a remote or contingent interest, requires an act of positive legislation. It would introduce a new provision. The term " parties" cannot, by any species of criticism, be made to mean " or other persons in interest."

The legislature have not deemed it expedient to go to that length : Nor do we so deem it. It would be impossible to foresee what remote and contingent interests might be involved in the progress of a suit, and to make the jurisdiction of the court to depend upon a disclosure of such an interest, would lead to the discussion of matters foreign to the issue, and would often interrupt the administration of justice.

The analogy attempted to be shown in the argument, between this exception to the magistrate and the grounds of challenge to a juror, does not hold. The operation of the two things, in practice, is widely different. In the case of jurors, it is in the power of the court to supply the places of those who may be liable to challenge, and even to excuse jurors where the objection falls short of a legal ground of challenge. All this may be done without obstructing the administration of justice. But with respect to judges, an exception to the jurisdiction, if well founded, is fatal to the proceeding. There is no power to substitute another trier, nor to exercise that discretion, which is very properly confided to courts in the selection of jurors.

Another question, which has been raised in the case is, whether the plaintiffs have sufficiently shewn their corporate existence. It appears that they gave in evidence their charter, and proved the completion of the road, the acceptance of it, as required by the charter, the erection of toll-gates, &c. But it is insisted, that they should also have produced the record of

BENNINGTON,
*February,*
1834.

Searsburgh
Turnpike Co.
*vs.*
Cutler.

their organization.  We think this was unnecessary; and that their corporate existence was sufficiently proved.  The existence of a corporation *de facto* is always sufficient for the ordinary purpose of protecting the corporate rights against a stranger.  In some cases, as where an authority is claimed, by virtue of corporate powers, to interfere with the person or property of the citizen, greater strictness is required.  Such are the cases of the school districts, cited in the argument, where the power of taxation and of proceeding by distress was assumed.  In such cases, the proceedings must conform strictly to law.— But for the purpose of enforcing a contract, made with a supposed corporation as such, or of protecting the property of such a corporation from tort-feasors, it is enough to shew a corporation *de facto*.  What indeed is a corporation by prescription, but a corporation *de facto?*  Its legal origin is presumed from its continued existence; yet the production of the charter in this case, is at least as good as that presumption.  Shewing then an existence in fact, and the legality of that existence by the original charter, is all that can be required.

It is every day's practice, to admit proof of the existence of corporations, without even the production of the charter; and this in criminal cases.  In indictments for uttering counterfeit bank notes, parol proof of the existence of the corporation in fact, is uniformly admitted.  Indeed, frequent as these indictments are, as well as convictions upon them, I do not recollect a single instance of the production of the bank charter in such a case, since I have been upon the bench.

I am aware that where a corporation is plaintiff, the corporate capacity must be shewn.  But the question here is, what proof is *prima facie* sufficient to establish it?  In this case, the plaintiffs have shewn a legal origin by their charter, and an existence *de facto* by their acts.  Of what use is the production of their record of their own proceedings?  Suppose it produced, and their proceedings found irregular, what would be the consequence?  An erroneous opinion has obtained, that the corporation would be extinct.  This by no means follows.  It is not every irregularity, or want of conformity with the directions of the charter, which would annihilate the corporation.  Suppose the directors of a bank are elected, but the meeting of the stockholders is not duly warned,—or suppose the election to take place on the second Tuesday in January, when, by the

BENNINGTON,
February,
1834.

Searsburgh
Turnpike Co.
vs.
Cutler.

charter, it should be on the first : Is the corporation dissolved ? Shall every contract, entered into during the year, be deemed void, for want of parties ? Shall all the securities in their hands be held ineffectual for want of a capacity to sue, or shall there be no tangible responsibility for their paper which may be float-- ing in the community ? The operation of such a rule could not be endured. Had the common law contained such a dogma, it would long since have been rooted out by legislative action. Informations in the nature of a *quo warranto*, to try the right to an office, are frequent in England ; yet it was never suppo- sed that a decision against the regularity of the proceedings, and against the right of the incumbent, destroyed the corporation. But if an election is set aside, a new election follows.

Acts of incorporation, like the one in question, frequently di- rect the manner of proceeding, the time, place, and manner of electing officers and holding meetings of the corporators, &c. Now if the corporation proceed to act under their charter, al- though these directions are not strictly followed, yet they act as a corporation, and by virtue of their charter, and may have an existence in fact to the purposes for which they are incorpo- rate. So long as they have such existence in fact, they are most clearly subject to all the liabilities and duties imposed by the charter, and, as a necessary consequence, entitled to the corresponding rights. A charter may even be forfeited, and still the corporate capacity remain. It is only when the for- feiture is enforced, and the charter vacated by competent au- thority, that the corporation and its legal capacity ceases.

Another point was made at the trial, which does not appear to be relied upon here ; and that is, that the legislature has no power to authorize the plaintiffs to locate their turnpike upon a previously established road. This point has been discussed heretofore, and has been, in more than one instance, formally decided. By the establishment of a public highway, the pub- lic acquire an easement in the land, or right of passing over it. But this right the public may relinquish, and, as the legislature are the guardians of the public interest in this particular, it ap- pertains to that body to relinquish the public right, when they deem it expedient.

Judgment affirmed.