GRAND LODGE OF MASONS *v.* CITY OF BURLINGTON.

October Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 16, 1911.

*Exceptions—Questions Reviewable—Questions not Raised Below— Taxation—Exemptions—Charitable Use—"Used"—P. S. 496 —Construction—Acts of Assessors—Erroneous Decision of Board of Civil Authority—Effect—Res Judicata.*

An excepting party will be confined in this Court to the claim that he made below.

A claim below that certain property is exempt from taxation, under P. S. 496, as property "devoted" to charitable uses, meant that the property is so "set apart".

In P. S. 496, exempting from taxation "real and personal estate granted, sequestered or used for public, pious or charitable uses," the word "used" means, certainly as applied to real estate, the direct and immediate use of the property; and, therefore, the Masonic Temple of the Grand Lodge of Masons is not exempt from taxation, as "used" for charitable uses, where the whole building is let to tenants who pay rent to the Grand Lodge, which has no intention ever to use the building itself, or any part of it, directly and immediately for charitable uses, but merely intends to use the net income from the rents for such uses at some future uncertain time.

Nor is the property exempt from taxation under P. S. 498, exempting from taxation property exclusively used for the support of hospitals and asylums, because the building is not at present used for the support of such institutions.

The fact that real estate subject to taxation was listed in the quadrennial

appraisal apart from the taxable real estate did not fix its status as non-taxable property during the whole quadrennial period, for it was not the duty of the assessors thus to list it apart, but their duty was only to appraise it subject to review on appeal to the board of civil authority.

The erroneous decision of the board of civil authority, reversing the judgment of the assessors who listed and taxed non-exempt real property, and exempting the property from taxation, was valid for the year in which it was made, where it was allowed to stand, but the assessors and board of civil authority could properly tax the property the following year, notwithstanding the previous decision to the contrary, for the boards in each year had jurisdiction, and *res judicata* goes, not to the jurisdiction, but only in bar.

ASSUMPSIT for money paid under protest for taxes. Plea, the general issue. Trial by court at the October Term, 1910, Chittenden County, *Stanton*, J., presiding. Judgment for the defendant. The plaintiff excepted.

The taxes paid defendant under protest were levied on plaintiff's Masonic Temple in the city of Burlington for the years 1905, 1906, and 1907.

By No. 259 of the Acts of 1896, certain of plaintiff's officers as such, and their successors in office, were given corporate powers with perpetuity for the purpose of taking and holding real and personal estate for a site for a Masonic Temple, the building erected or to be erected thereon, and the furniture and furnishings of the same, for the use and benefit of the fraternity of Ancient, Free and Accepted Masons of the State of Vermont, and other charitable purposes.

Having acquired title to certain land in Burlington, plaintiff, in 1898, erected thereon said Temple at a cost of about $82,000. The property was appraised in the quadrennial appraisal of that year, and set in the list of property exempt from taxation in the same way churches, schoolhouses, and such buildings are exempted. And the same disposition was made of it in the quadrennial appraisal of 1902. In 1904 the assessors of the city appraised the property and set it in the grand list for taxation at a valuation of $60,000. Plaintiff appealed to the board of civil authority, which sustained the appeal and exempted the property, and the valuation was deducted from the grand list of that year, and the property was not taxed. In 1905 the

assessors set the property in the grand list at $85,000, the valuation put upon it in the quadrennial appraisal  of 1902. Plaintiff again appealed, but the appeal was not sustained, and the property remained in the taxable list at $85,000.   The same thing occurred in 1906 and 1907, except that in 1907 the valuation put upon it by the assessors in the grand list was $60,000, which was the quadrennial appraisal of 1906.   These taxes were not paid when due, but were subsequently paid under protest, to prevent a sale of the property for their collection.

The finding of facts say that "it was the claim of the plaintiff that said property was not taxable because it came within the provisions of the statute relating to the exemption of property from taxation for that it was property devoted to  charitable uses," and that plaintiff also claimed ‑that the taxes for 1905 and 1906 were wrongfully levied because the property had been set in the "exempt" list in the quadrennial appraisal of 1902, which was the basis on which the taxes for those years were levied. During the years in which the taxes sought to be recovered were assessed, the Temple was rented as follows, namely: the first floor, for stores; the second floor, for offices and a hall for public uses; the third, fourth, fifth, and sixth floors, to different masonic bodies for purposes connected with the order.

Plaintiff is now indebted for the construction of the Temple, as of June, 1909, in the sum of $35,000; and ever since the Temple was built, the income therefrom has been and now is, devoted according to the following resolutions of the Grand Lodge, namely:   (1)   "That the income from rent, together  with the Temple fund, be kept separate from all other funds, and applied to the payment of janitor services, light, heat, repairs and princiapl, until the Temple is paid for, unless specially appropriated for charitable purposes;" and (2) "That when the Temple is paid for, the net income from rent be set apart for the purpose of securing a Masonic Home and charitable uses, and  that it be used for such purposes and such purposes only, forever."

Plaintiff is the governing body in Vermont of the secret society known as Freemasons, of which there are 12, 500 in the State, distributed among one hundred and three subordinate lodges, representatives of which annually assemble in Burlington and elect officers of the Grand Lodge.

In addition to income derived from rentals as aforesaid, an annual fund is raised by per capita assessment of the members of the organization.

The teachings of Freemasonry is a system of morality based upon and inculcated in the practice of moral and Christian virtues, especially the practice of brotherly love and relief, and the practice, or rather the recognition, of the cardinal virtues, particularly temperance, fortitude, and justice, and the Christian virtues of faith, hope, and charity.

There are no regulations as to the methods of dispensing charity by the order, nor has the order any special system of such dispensation, nor any by which a member of the order is entitled to receive any special sum under any particular circumstances. But it extends its charity to an individual according to his needs and the disposition of the dispenser, whether it be the lodge of which he is a member or the Grand Lodge. It does not appear that the charity dispensed by the plaintiff extends beyond the members of the order and their families though there is nothing to show that it is necessarily so restricted.

There was evidence tending to show that the plaintiff had in contemplation the building of a masonic home from the funds that may accumulate from the income of the property, but no definite steps have been taken in that direction. Such a home would be for the members of the order and those dependent upon them.

On these facts the court below held as matter of law that the placing of the property in the exempt list of 1902 did not preclude the assessors from taking it out and placing it in the list for taxation any subsequent year during the current quadrennial period, and that the Temple was not used *per se* for charitable purposes. And it being conceded that in all other respects the taxes were properly assessed, and that all the statutory requisites in regard to their assessment and collection were complied with, the court rendered judgment for defendant to recover its costs, to which plaintiff excepted.

*Watson & Tillotson*, and *George W. Wing* for the plaintiff.

The plaintiff, constituted as it is, by and representing,

as it does, the fraternity of free and accepted Masons for the State of Vermont, and holding said property for the benefit of said fraternity "and other charitable purposes," is a pious and charitable institution, and property devoted to and used for masonic purposes is therefore exempt under section P. S. 496. 2 Pom. Eq. Jur. §1021; *Jackson* v. *Phillips*, 14 Allen 556; *Gould* v. *Washington Hospital*, 95 U. S. 311; *King* v. *Parker*, 9 Cush. 71; *City of Indianapolis* v. *Grand Master etc.*, 25 Ind. 518; *Mayor etc. Savannah* v. *Solomon's Lodge*, 53 Ga. 93; *Burdine* v. *Grand Lodge of Alabama*, 37 Ala. 473; *State* v. *Addison*, 2 So. Car. 499; *State* v. *Board of Assessors*, 34 La. Ann. 574; *Duke* v. *Fuller*, 9 N. H. 536; *Woman's etc. Soc.* v. *Taylor*, 173 Pa. 456; *M. E. Church* v. *Hinton*, 92 Tenn. 188; *Minns* v. *Billings*, 183 Mass. 126; *Donohugh's Appeal*, 86 Pa. 306; *Mass. Gen. Hospital* v. *Somerville*, 101 Mass. 319; *Philadelphia* v. *Penn. Hospital*, 154 Pa. 9; *Sherman* v. *Cong. Missionary Soc.*, 176 Mass. 349; *Matter of Vassar's Will*, 127 N. Y. 1; *Franklin Square House* v. *Boston*, 188 Mass. 409; *Mass. Soc. etc.* v. *Boston*, 142 Mass. 24; *Widows etc. Home* v. *Kentucky*, 16 L. R. A. (N. S.) 829; *Fitterer* v. *Crawford*, 50 L. R. A. 191; *Hibernian Ben. Soc.* v. *Kelly*, 30 L. R. A. 167; *Petersburg* v. *Ben. Assn.*, 78 Va. 431; *Bank of Commerce* v. *Tennessee*, 104 U. S. 493; *Massenburg* v. *Grand Lodge*, 81 Ga. 212; *First M. E. Church* v. *Chicago*, 26 Ill. 482; *Mulroy* v. *Churchman*, 52 Ia. 238; *Foxcroft* v. *Campmeeting Assn.* 86 Me. 78; *Auburn* v. *Y. M. C. Assn.*, 86 Me. 244; *Frederick Co.* v. *Sisters of Charity*, 48 Md. 34; *Appeal Tax Ct.* v. *St. P. Academy*, 50 Md. 321; *Baltimore* v. *Grand Lodge*, 60 Md. 280; *Meetinghouse* v. *Lowell*, 1 Met. 538; *Cambridge* v. *Middlesex Co.*, 114 Mass. 337; *Detroit etc. Soc.* v. *Detroit*, 3 Mich. 172; *State* v. *Lester*, 28 N. J. L. 103; *State* v. *Woodruff*, 36 N. J. L. 94; *People* v. *Sayles*, 32 N. Y. App. Div. 197; *Cleveland Lib. Assn.* v. *Pelton*, 36 Ohio St. 253; *Scott* v. *Athens*, 1 Ohio N. P. 94, 1 Ohio Dec. 84; *Am. Sunday School Union* v. *Philadelphia*, 161 Pa. St. 307; *Philadelphia* v. *Barber*, 160 Pa. St. 123; *Mercantile Lib. Co.* v. *Philadelphia*, 161 Pa. 155.

The property in question, considered independently from the status of its owner, but sequestered, as it is, for the purpose of acquiring and maintaining a home for indigent, old and infirm inmates, and other charitable uses, is exempt under P. S.

498. *Willard* v. *Pike* 59 Vt. 202 ; *School Land Comrs.* v. *Wadhams,* 11 L. R. A. 210; *Masonic Education and Charity Trust* v. *City of Boston,* 201 Mass. 320.

By placing said property in the taxable list for 1905, the assessors, in effect, changed the quadrennial appraisal of 1902, and this was clearly beyond their authority to do. *Grout* v. *Johnson,* 73 Vt. 268; *Waterman* v. *Davis,* 66 Vt. 83; *Iron Works* v. *Cone,* 56 Vt. 603; *Godfred* v. *Bennington Water Co.,* 75 Vt. 350.

*Martin S. Vilas* for the defendant.

The Masonic order is not a charitable organization within the meaning of the statutes exempting from taxation. *Massenburg* v. *Grand Lodge etc.,* 81 Ga. 212, 7 S. E. 636; *City of Bangor* v. *Rising Virtue Lodge,* 73 Me. 428, 40 Am. Rep. 369; *Morning Star Lodge etc.* v. *Hayslip,* 23 Ohio St. 144; *City of Phila.* v. *Masonic Home,* 160 Pa. 572, 28 Atl. 954; *Price* v. *Maxwell,* 28 Pa. 35; *Perrin* v. *Carey,* 24 How. 506; *Coggleshall* v. *Pelton,* 77 Johns. 294; *Episcopal Academy* v. *Phila.,* 150 Pa. 565; *Atty. Gen.* v. *Healer,* 2 Sim. and Steu. 77; *Thompson's Ex.* v. *Norris,* 20 N. J. Eq. 524; *Humphries* v. *Little Sisters of the Poor,* 29 Ohio St. 206.

But even if the Masonic order is a charitable organization, this property cannot be exempt from taxation, for the income therefrom is not so devoted to the immediate purposes of the organization as to make the use a charitable one within the meaning of the statute. *Montana Catholic Missions* v. *Lewis and Clark County,* 13 Mont. 559; 12 Am. & Eng. Enc. of Law, 2nd Ed. 292, 323; *Chamberlain* v. *Whitney,* 65 Vt. 488; *Washburne College* v. *Shawnee Co. Com'rs.,* 8 Kan. 344; *Boston Sec. etc.* v. *City of Boston,* 129 Mass. 178; *City of New Orleans* v. *St. Patrick's Hall Assn.,* 28 La. 512. And besides, on no theory can this Temple be exempt from taxation unless it is used directly and immediately for charitable uses. *Hibernian Benevolent Society* v. *Kelly,* 28 Ore. 173; *City of Ind.* v. *Grand Lodge of Ind.,* 25 Ind. 518; *City of Baltimore* v. *Grand Lodge etc.,* 60 Md. 280; *St. Mary's College* v. *Crowl,* 10 Kan. 442; 12 Am. & Eng. Enc. of Law, 318, 320; *City of New Orleans* v. *St. Ann's Asylum,* 31 La. Ann. 292.

ROWELL, C. J.  The plaintiff relies upon P. S. 496, subdivision VI, which declares that "real and personal estate granted, sequestered, or used for public, pious, or charitable uses, shall be exempt from taxation."  No claim is made that the property in question is granted for any of those uses, but it is claimed that it is sequestered and used for pious and charitable uses. As it was not claimed below that it is sequestered or used for pious uses, that question can not be raised here.  Nor was the question of sequestration for charitable uses raised below any further than it is involved in the claim there made that the property is "devoted" to charitable uses.  But as the word "devoted" as there used fairly means, set apart, it is taken that the plaintiff claimed below that the property is sequestered, in the sense of being set apart, for charitable uses.

We assume without deciding that the expenditure of the net income from the rent in the way the plaintiff dispenses its charities and for the purposes named in the resolution, would be a charitable use of it within the meaning of the statute. But the time for such expenditure has not come, and will not come till the Temple is paid for and the fund accumulated, which will not be for a considerable time, according to the case.

It cannot be said that the corpus of the property is now used for charitable uses, for the entire building is let to those who pay rent therefor to the plaintiff.  Nor does the case disclose any intention on the part of the plaintiff ever to use the building itself or any part of it directly and immediately for such uses.  And the mere intention to use the net income from the rent for such uses at some uncertain future time, before the arrival of which the intention may be changed, and the fund devoted to another and an entirely different purpose, is not a use of the property for charitable purposes within the meaning of the statute, for by the word "used", employed in the statute, as applied to real estate, certainly, the direct and immedate use of the property itself is meant, and not the remote and consequential benefit derived from its use. Thus in *Stiles* v. *Newport,* 76 Vt. 154, 164, 56 Atl. 662, it is held that under the doctrine of implied exemption as applied to municipalities, the ultimate test is, not municipal ownership

but public use. So in *The First M. E. Church* v. *Chicago*, 26 Ill. 482, the question was whether, under a statute exempting from taxation "every building erected for the use of any literary, religious, benevolent, charitable, or scientific institution," a building was exempt of which a part was used exclusively for religious purposes and a part was rented for compensation and the proceeds applied to religious purposes; and it was held that the part used for religious purposes was exempt, but that the part rented for compensation was not exempt. The court said that the meaning of the statute was, as applied to religious buildings and the furniture, that they must be used directly for sacred and not for secular purposes; that it was not enough that the profits or income of the secular uses were to be appropriated to sacred purposes; that when money was made by the use of the building, it was profit, no matter to what purpose it was applied.

In *Northwestern University* v. *The People*, 80 Ill. 333, 22 Am. Rep. 187, the Constitution of the state provided that such property as the General Assembly might deem necessary "for school, religious, and charitable purposes, might be exempt from taxation." The court said that by the language of the Constitution the General Assembly was restricted in the exercise of its discretion to property for schools and religious and charitable purposes; that property for such purposes, in the primary and ordinary acceptation of the term, is property that in itself is adapted to, and intended to be used as an instrumentality in aid of, such purposes; that it is the direct and immediate use, and not the remote or consequential benefit to be derived through the means of the property, that was contemplated. But the Supreme Court of the United States, reviewing the case on error, said that the Constitution did not say "property used for schools," as the opinion of the court below implied; that neither the important word *use* nor *schools* was found in the Constitution; that if the language had been that the Legislature might "exempt property for the use of schools," that Court would readily have agreed with the court below, for that would indeed have been the appropriate language to convey the idea on which that court rested its decision; but that the makers of the Constitution used other language because they had another

meaning, and did not use that language because they did not mean it; that they said the Legislature might exempt from taxation "such property as they might deem necessary," not for the use of schools, but "for school purposes;" that the distinction is very broad between property contributing to the purposes of a school and property that is directly or immediately subjected to use in the school; that the purposes of the school and the school are not the same; that the purpose of a college or university is to give youth education; that money that comes from the sale or rent of land dedicated to that object aids the purpose; and that land so held and leased is held for school purposes in the fullest and clearest sense. *University* v. *People*, 99 U. S. 309, 25 L. ed. 387. That case is referred to in *Book Agents of Methodist Episcopal Church, South,* v. *Hinton*, 92 Tenn. 188, 19 L. R. A. 289, 295, 21 S. W. 321, as instructive on the point of the immediate use of the property. See the note to that case, and 12 Am. and Eng. Ency. Law, 2d Ed., 318.

So where a statute exempted municipal property from taxation, it was held to be its unmistakable meaning that the exemption should extend only to such property as was actually used in the exercise of municipal functions, and not to property leased by the municipality, though the money realized therefrom was applied to a public purpose. *Cincinnati* v. *Lewis*, 66 Ohio St. 49, 63 N. E. 588.

Nor does the mere adoption of an ambulatory resolution to devote to charitable uses the income of the property after the building is paid for, constitute a present sequestration of it to those uses, for it is at most only a thing in expectancy, and may never become a thing in possession.

The plaintiff also relies upon P. S. 498, which somewhat restricts the language above quoted from sec. 496, and provides that lands or buildings exclusively used for the support of orphanages, homes, asylums, or hospitals that, without pay, receive and care for indigent, old, or infirm patients or inmates, shall be exempt from taxation. But the case does not come within that provision, for the building is not now being used for the support of any such institutions any more than it is sequestered to charitable uses.

But the plaintiff says that the taxes for the years 1905

and 1906 were levied without authority, because the property was specially set aside as exempt in the quadrennial appraisal of 1902, which fixed its status as non-taxable for that full quad rennial period; and because ·the decision of the board of civil authority in 1904, on appeal from the assessors, was conclusive on both parites for the remainder of that quadrennial period.

The fact that the property was set in the quadrennial appraisal apart from the taxable real estate did not fix its status as non-taxable, because it was not the duty of the assessors thus to set it.   Their only duty was to appraise it.   This is shown by the fact that then the only appeal allowed was from the appraisal.   V. S. 392.   But now, under No. 29, Acts of 1906, P. S. 529, 530, an appeal is allowed, not only from the appraisal, but also from any of the acts of the assessors.   But whether this change imposes any duty upon assessors in this behalf, it is not necessary to inquire.

·And when in 1904 the assessors set the property in the grand list and taxed it, they were within their jurisdiction, for, as we have seen, the property was taxable.   Therefore, the decision of the board of civil authority, reversing the judgment of the assessors and exempting the property, was erroneous, to say the least.   But if only erroneous, it was good for that year, as it was allowed to stand.   But when in 1905 the listers again set the property in the grand list and taxed it, and their action was affirmed by the board of civil authority on appeal, that concluded the matter for that year, for the property was taxable, and so both boards had jurisdiction, and this, notwithstanding the contrary judgment of 1904, for *res judicata* goes, not to the jurisdiction, but only in bar.   And if the board of civil authority erroneously disallowed the bar, which we do not decide, its judgment was good for that year, not being set aside.

The action taken in 1906 being like the action taken in 1905, it follows that the taxes of these years were legally assessed, and so not recoverable.

*Judgment affirmed.*