TOWN OF SHELDON *v.* SHELDON POOR HOUSE ASSOCIATION.

November Term, 1926.

Present:   WATSON, C. J., POWERS, SLACK, and FISH, JJ.

Opinion filed January 6, 1927.

*Corporations—Organization of Existing Corporation under Amendatory Act Unnecessary—De Facto Corporation—Taxation—Constructions of Statute in Light of All Its Provisions—Exemption from Taxation—Exempting Statutes Strictly Construed.*

1.  Acts 1906, No. 423, constituting superintendents of poor, and their successors in office, in certain towns, a corporation by name of Sheldon Poor House Association, with power, among others, of receiving both real and personal property, for purpose of caring for, keeping, and maintaining poor people in such towns, *held* merely amendment to articles of existing corporation of same name, thus making organization under latter act unnecessary.

2.  Sheldon Poor House Association, comprising several towns formed as a corporation in 1846 under then existing law, to receive and hold property for support of paupers of such towns, *held* under findings of court, to be at least a *de facto* corporation.

3.  Property of Sheldon Poor House Association *held* not exempt under charter of association, as amended by Acts 1906, No. 423, whether amendatory act be considered as it was passed by two houses and approved by governor, from which clause in original bill exempting association from taxation had been stricken, or as erroneously copied by engrossing clerk with the words "and be exempted from taxation," included.

4.  Engrossed act of Legislature must be construed in light of all its provisions.

5.  Where engrossed Act (Laws 1906, No. 423) in section 1 contained, by implication at least, a provision exempting all property of Sheldon Poor House Association from taxation, and section 5 of same act, either in express terms or by necessary implication provided that such property should be taxed, there being an irreconcilable conflict, later provision must be taken to express legislative will, and earlier stands impliedly repealed.

6. Property of Sheldon Poor House Association *held* not exempt under ·general tax laws of State (V. S. 362, par. VII, as amended by Acts 1906, No. 24, par. VII [G. L. 684, par. VII]), first clause of amendatory act, exempting property "used for public, pious, or charitable uses," being inapplicable because of later special provision for such property in such amendatory act, and no exemption being given under latter clause, exempting "lands and buildings owned and used by towns for the support of the poor therein," as word "therein" limits exemption to property belonging to town claiming exemption and therein situated.

7. Statutes of exemption are to be strictly construed, and no claim of exemption can be sustained unless within express letter or necessary scope of exempting clause.

ACTION OF CONTRACT to collect taxes. Plea, general issue, and notice of special defenses. Trial by court at the April Term, 1926, Franklin County, *Moulton,* J., presiding. Judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed.*

*Watson & McFeeters* for the defendant.

*F. L. Webster* and *M. H. Alexander* for the plaintiff.

SLACK, J. This is an action of contract in the form of assumpsit to recover taxes assessed in 1924. The plaintiff had judgment below on facts found and stated by the court, and the case is here on defendant's exceptions. The questions for review are whether defendant owns the property on which the taxes in question were assessed, and if it does whether such property is exempt from taxation either under the terms of defendant's charter or the general tax laws of the State.

These facts appear from the findings, which are not excepted to: In 1846 the towns of Highgate, Swanton, Sheldon, and Franklin formed a corporation under the then law, under the name of the Sheldon Poor House Association. On March 28, 1846, one Burt conveyed a part of the real estate sought to be taxed to one Dewing, "in special trust for and for the sole benefit of the aforesaid towns of Highgate, Swanton, Sheldon and Franklin and to be used for the support of the paupers of

the aforesaid towns and to be a place upon which the said paupers may reside and for no other purpose whatsoever.'' On May 4, 1855, one Perry conveyed to one Jennison certain other real estate sought to be taxed ''upon the special confidence and trust hereinafter mentioned, that is to say in trust and confidence for the towns of Sheldon, Highgate, Enosburg, Franklin, Berkshire, Swanton and Fairfield, all in said county and State, for the purpose of supporting a Poor House for said towns so long as said towns may see fit and then to be conveyed by the said Jennison, his heirs and assigns, as said towns shall direct,'' etc. In April, 1870, one Olds, as administrator of one Marvin's estate, conveyed to the Sheldon Poor House Association, its heirs and assigns, another parcel of land which is part of the property sought to be taxed. On October 2, 1906, the directors of the Sheldon Poor House Association, by vote, instructed its law agent to have that corporation incorporated under the name of the Sheldon Poor House Association. Subsequently the Legislature passed an act incorporating the Sheldon Poor House Association, which act provided that the superintendents of the poor of the towns of Swanton, Highgate, Franklin, Berkshire, Enosburg, Sheldon, Fairfield, St. Albans Town, and St. Albans City, and their successors in office annually appointed or elected ''are hereby constituted a body politic and a corporation by the name of the Sheldon Poor House Association,'' and (among other things) may receive property, real and personal, for the purpose of caring for, keeping and maintaining the poor people in such towns, etc. Act No. 423, Laws 1906. Section 1 of such act provides that said corporation—''may hold, manage and control the same (the property, real and personal, theretofore mentioned) in the same manner and form as is now provided for the control, management and operation of the Sheldon Poor House Association, and have all the powers incident to corporations, but in no way to interfere with the provisions of such Association as it is now managed and controlled.'' Section 3 of such act provides that, ''Neither this corporation nor the several towns shall have any property rights in the real or personal property of the Sheldon Poor House Association, except such use as has already been assigned to it, or hereafter may be assigned to it, in newly acquired property of this corporation, by the donors, or devisors of such property, if any such shall be; and all property shall be used for the purposes designated; but all the property of the

Sheldon Poor House Association now owned, occupied or possessed by the Sheldon Poor House Association for the pur-pose of such Association, now specified in the articles of such Association, and all that shall hereafter come to such corporation for such purposes, shall be held in trust by this corporation for the aforesaid purposes forever.'' Both the said Dewing and the said Jennison deceased prior to the passage of such act, and thereafter, one Abell was appointed administrator *de bonis non* of their respective estates, and, after being duly licensed so to do in each instance, he conveyed the property formerly held by them in trust to the Sheldon Poor House Association by several deeds bearing date October 29, 1915. Since the passage of such act the Sheldon Poor House Association has occupied and possessed the premises sought to be taxed. It is also found that: ''The corporate records of the Sheldon Poor House Association show no attempt at an organization of such corporation at any time since the Act of 1906 was passed, and there is no other evidence of such organization.'' In view of the other findings, we take the latter finding to mean no other evidence of actual organization.

[1, 2]   While the act in question does not purport to be an amendment of the articles of the existing corporation, it seems to us that in the circumstances disclosed such is its real effect and that it should be so construed, which would make organiza-tion thereunder unnecessary. But be that as it may, the find-ings as we construe them, show that defendant was, at least, a *de facto* corporation. It had a valid charter under which the powers assumed by it might be lawfully exercised, and it had actually exercised such powers for nearly eighteen years,—had ''occupied and possessed the premises here sought to be taxed'' during all of that time, and in 1915 acquired title to the trust property formerly held by Dewing and Jennison. This was a sufficient showing of corporate existence to meet any challenge thereof made in this case. *Montpelier & Wells River Railroad Co.* v. *Langdon,* 46 Vt. 284; *Bank of Manchester* v. *Allen,* 11 Vt. 302; *Searsburgh Turnpike Co.* v. *Cutler,* 6 Vt. 315.

The defendant says, however, that such act did not pass, or attempt to pass, title to any property to defendant. Even so, defendant was thereby authorized to receive property, both real and personal, and ''hold, manage and control the same in the same manner and form as is now provided for the control, man-

agement and operation of the Sheldon Poor House Association,'' etc., and it had acquired title to the Dewing and Jennison properties. This being so, these properties, at least, were taxable to defendant, if taxable to any one. Whether the real estate conveyed by Marvin's administrator to the Sheldon Poor House Association stands differently we do not inquire, since it is not claimed that it does. To hold these various pieces of real estate taxable to defendant in no way affects the trust obligations and limitations with which they were severally impressed by the original grantors.

It appears that when the bill which, as amended, became Act No. 423 was introduced in the Legislature, it provided (section 1), among other things, that the corporation might receive donations, gifts, bequests of money and other property, real and personal, ''and be exempt from taxation,'' and also contained in section 4 the following: ''And relieve the property held by such corporation, for the purposes aforesaid, from all taxes forever''; that it was amended by striking out all of the words above quoted and by adding a new section which reads as follows: ''Sec. 5. The farm of the Sheldon Poor House Association shall be subject to no greater appraisal per acre than similar farm lands in that locality used and operated as farm property. Any valuation in excess of such appraisal shall be exempt from taxation. The farm house and barns are the only buildings to be taxed. The personal property shall be taxed subject to offset, if any, as in ordinary cases''; that as thus amended the bill passed the two houses and was approved by the Governor; that through error of the engrossing clerk the words, ''and be exempt from taxation,'' which formerly appeared in section 1, were copied into the engrossed act made pursuant to the provisions of G. L. 320 and 370 (P. S. 255 and 292), and there appear as part of such engrossed act. In all other respects the bill which was actually passed and the engrossed act are alike.

The plaintiff contends that the bill as it finally passed the two houses and was approved by the Governor is the law, and, of course, controls; while defendant insists that by virtue of the provisions of G. L. 39, which are as follows: ''The acts and resolutions engrossed or typewritten in pursuance of law under direction of the Secretary of State and kept in his office, shall be taken to be the laws and resolutions of the session of the

general assembly at which they were passed,''—the engrossed act is the law, and controls.   This presents a question never before raised in this jurisdiction, or in any other so far as we have discovered.   Since the contents of the bill that finally passed the two houses and was approved by the Governor is, in effect, conceded, the question is not, as is assumed by the parties, whether such bill can be impeached by the journals of the two houses, or other extrinsic evidence, a subject concerning which much has been written, and many different conclusions have been reached, but rather the scope and effect to be given to G. L. 39, whether the Legislature, which is the lawmaking body, can by legislative enactment provide what ''shall be taken to be'' evidence of the laws enacted by it.   Since it is apparent that the determination of this question does not affect the result of this case, we express no opinion concerning it.

[3-5]   It is not claimed that the property taxed was exempt from taxation under the terms of defendant's charter as it passed the two houses and was approved by the Governor.   Nor was it exempt, as we shall see, under the engrossed act when that act is construed in the light of all of its provisions, as it must be.   Assuming, without so deciding, that the engrossed act controls, we find, in section 1, a provision exempting defendant's property—by implication, at least, all of its property—from taxation, while section 5, either in express terms or by necessary implication, provides that such property shall be taxed. That these provisions present an irreconcilable conflict cannot be doubted.   This being so, the later provision will be taken to express the legislative will.   Mr. Endlich in his work on Interpretation of Statutes, paragraph 182, says: ''It is impossible to will contradictions; and if two passages are irreconcilable, the earlier stands impliedly repealed by the latter''; and in the next paragraph he states the rule thus: ''Where, in a statute, there are several clauses which present, as compared with each other, irreconcilable conflict, the one last in order of date or local position must, in accordance with this rule, prevail, and the other be deemed abrogated to the extent of such repugnancy; whether the conflicting clauses be sections of the same act, or merely portions of the same section.''   See also Sutherland Stat. Con. (2nd ed.) p. 349; Puffendorf's Rule stated in Potter's Dwarris on Stat. and Const., p. 132; *United States* v. *Jackson* (C. C. A.), 143 Fed. 783; *In re Richards* (C. C. A.), 96 Fed. 935; *Howard*

v. *Bangor, etc. Co.,* 86 Me. 378, 29 Atl. 1101; *Harrington* v. *Rochester,* 10 Wend. (N. Y.) 547, 553; *Hand* v. *Stapleton,* 135 Ala. 162, 33 So. 689; *Van Horn* v. *State,* 46 Neb. 62, 64 N. W. 365; *Albertson* v. *State,* 9 Neb. 429, 2 N. W. 742. It must be held, therefore, that the property in question is not exempt from taxation under the terms of defendant's charter, even as evidenced by the engrossed act.

It remains to consider whether such property was exempt from taxation under the general tax laws of the State.. Clearly it was not so exempt prior to 1906. See No. 34, Acts 1860; V. S. 362, par. VII; No. 13, Acts 1898. By No. 24, Acts 1906, paragraph VII of section 362 of the Vermont Statutes, which enumerates certain classes of property which were exempt from taxation, was amended to read as follows: ''Real and personal estate granted, sequestered or used for public, pious or charitable uses; real and personal estate used by public and private circulating libraries, open to the public and not used for profit; lands leased by towns for educational purposes, and lands owned or leased by colleges, academies, or other public schools or leased by towns for the support of the gospel; and lands and buildings owned and used by towns for the support of the poor therein, but private buildings on such lands shall be set in the list to the owners thereof, and shall not be exempt.''

[6]    The defendant contends that the property in question is exempt from taxation under the first clause of the amendatory act because it is used for public and charitable uses, and also that it is exempt under the later clause relating to lands and buildings owned and used by towns for the support of the poor therein. The first claim is obviously untenable. That the Legislature did not intend the first clause to include such lands and buildings is manifest from the fact that it made special provision for such property, which it presumably would not have done had it intended the first clause to receive the construction contended for. In other words, the fact that the Legislature placed such lands and buildings in a class by themselves negatives its intention to include them in the properties covered by the first clause. Nor do we think this property exempt from taxation under the other clause of the amendatory act relied upon when the language of that clause is rightly understood. We attach more significance to the word ''therein'' which appears in this clause than either of the parties appear to. With-

out it, the language of the clause is susceptible of the construction that defendant contends for; namely, that regardless of where such lands and buildings are located, whether within or without the territorial limits of the town owning and using them for the support of its poor, they are exempt from taxation. Such, evidently, was the view that the Legislature took of this language, and it is equally evident that such was not what that body intended, since it appears that the word "therein" was added to the original bill by amendment, pending the passage of that bill. See H. J., p. 438. It is significant, too, that such amendment was made four days after the bill incorporating defendant passed the House. See H. J., pp. 395, 438. In that bill, as has been seen, the question of exempting from taxation lands and buildings located in one town, but owned and used by other towns for the support of their poor, was squarely before the Legislature, and by various amendments the exemption of such property was denied. That bill as it was finally passed was in keeping with the long-settled policy of the State concerning the support of the poor and indigent; namely, that each town and city shall bear the burden of supporting its poor, except such as are insane, etc. Few laws of the State have received more viligant attention by our lawmakers than those relating to the support of our poor, and, so far as we are aware, no attempt has ever been made to charge one town with the burden of supporting the poor of another town, even in the smallest amount, unless such be the effect of the provision under consideration. Such burden has always been regarded, and treated, as a purely local one; and so it must remain until the Legislature declares a different policy in more unmistakable language than that here employed.

It will be assumed that the Legislature had in mind the fact that lands and buildings owned and used by towns for the support of their poor, except where two or more towns unite for that purpose, are generally, if not always, located within such town; and we think that the word "therein" as used in this clause refers to the place of support, *i. e.*, in the town owning and using such buildings, etc., and where the same are presumably located. We have no idea that the Legislature intended to exempt from taxation lands and buildings owned by a town other than the one wherein such lands and buildings are located, nor do we think such to be the effect of this clause.

9

[7]   It should be borne in mind that statutes of exemption are to be strictly construed, and no claim of exemption can be sustained unless within the express letter or necessary scope of the exempting clause.  *In re Hickok's Estate,* 78 Vt. 259, 62 Atl. 724, 6 Ann. Cas. 578; *Frazier* v. *Slack & Bro. et al.,* 85 Vt. 161, 81 Atl. 161.   The exemption here claimed does not fall within either the express letter or necessary scope of this clause.

By special provisions therefor, the act incorporating defendant became effective from its passage (December 14, 1906), while act No. 24 did not go into effect until February first, following.   This situation gives rise to the claim that the latter act repealed the provisions of section 5 of the former, and *Harrington* v. *Harrington's Estate,* 53 Vt. 649, is cited in support of this claim.   Since the disposition of the questions already considered render this one immaterial, we do not notice it beyond calling attention to the fact that in the Harrington Case the Court was dealing with the effect of a later *general* statute on a prior *general* one; and that the rule of construction is different where the *later* statute is *general* and the *earlier* one is *special,* as in the instant case.   The rule governing the latter situation is stated by Mr. Justice Brewer in *Rodgers* v. *United States,* 185 U. S. 83, 46 L. ed. 816, 22 Sup. Ct. 582; and the reasons for the rule are given by Mr. Sedgwick in his work on Construction of Statutory and Constitutional Law, p. 98.

This disposes of all questions material to a disposition of the case.

*Judgment affirmed.*