GRAND LODGE OF VERMONT F. & A. M. *v.* CITY OF BURLINGTON.

May Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 18, 1932.

*Charles H. Darling* and *Charles B. Adams* for the plaintiff.

*Theo. E. Hopkins* for the defendant.

MOULTON, J. This is an action of contract to recover taxes paid under protest. The judgment of the trial court was for the defendant, and the plaintiff has brought the case here on exceptions.

There is an agreed statement of facts, by which the following appears: The plaintiff is composed of the three principal officers of the Grand Lodge of Free and Accepted Masons of the State of Vermont, who have received corporate powers in perpetuity under No. 259, Acts of 1896; and holds the title to the Masonic Temple in the city of Burlington. This building was erected in 1898, and was appraised by the assessors of the city, and set in the grand list for the year 1930. The plaintiff protested to the assessors claiming that the property was exempt, under G. L. 684, subd. VI. The protest was disallowed and an appeal was taken to the board of civil authority, but the action of the assessors was sustained. The taxes were then paid under protest. No question is made as to the regularity of the assessment, except in so far as the claim of exemption is concerned, and all statutory requisites have been complied with.

The plaintiff is the governing body in this State of the secret society generally known and called "Free Masons," the members of which are distributed among subordinate lodges. The first floor of the Temple is rented for stores; a part of the second floor for offices; and the balance of the second floor and all of the third, fourth, fifth, and sixth floors are rented to other masonic bodies, with the exception of a part of the third floor which is occupied by the plaintiff as its office and library. The

plaintiff also uses such part of the upper floors as it needs for its meetings.

The original conveyance of the property contained no provision concerning the uses or purposes of the grant. By a resolution, adopted by the plaintiff in 1899, it was provided in substance that, until the temple should be paid for, the net income from the rent of the building should be applied for this purpose, but that thereafter such net income should be set apart for the purpose of securing a Masonic Home and charitable uses, and ''that it be used for such purposes, and such purposes, only, forever.'' The Temple has been paid for, and during the time here material the net income, after the payment of operating expenses, repairs, etc., has been transferred to a permanent charity fund, and disbursed for the benefit of the members of the order and for the relief of others in need of assistance. This fund is also composed of assessments on the individual members of the subordinate lodges, together with interest and donations received.

According to the agreed statement, ''The teaching of Free Masonry is a study of morality based on and inculcated in the practice of moral and christian virtues, especially those of brotherly love and relief and the practice and recognition of the cardinal virtues, particularly the three, temperance, fortitude and justice, and of the christian virtues, faith, hope and charity; charity being recognized as one of the chief tenets of the order.''

The plaintiff bases its claim upon that clause in G. L. 684, subd. VI, which provides that real and personal estate granted, sequestered or used for public, pious, or charitable purposes shall be exempt from taxation. It is argued that the masonic body is a charitable organization, and that the temple is sequestered or used for charitable purposes.

It must be remembered that we are dealing with an agreed statement of facts, and that only necessary inferences arising therefrom can be drawn or considered. *Hooper, Tr.* v. *Kennedy,* 100 Vt. 314, 317, 137 Atl. 194; *City of Barre* v. *Town of Bethel,* 102 Vt. 22, 25, 145 Atl. 410; *Drew* v. *Bowen,* 102 Vt. 124, 127, 146 Atl. 254. The statement is to be considered in the light most favorable to the party who has prevailed on trial. *Reed* v. *Hendee,* 100 Vt. 351, 355, 137 Atl. 329. Furthermore, a statute providing for an exemption from taxation is to be

strictly construed (*Rixford Mfg. Co.* v. *Town of Highgate,* 102 Vt. 1, 5, 144 Atl. 680; *Sheldon* v. *Sheldon Poor House Ass'n,* 100 Vt. 122, 130, 135 Atl. 492; *Frazier* v. *William H. Slack & Bro.,* 85 Vt. 160, 162, 81 Atl. 161), although, of course, the construction must be reasonable, and not such as will defeat the purposes of the statute (*Rixford Mfg. Co.* v. *Town of Highgate, supra*), and this rule is not affected by chapter 2, section 64, of our State Constitution, which provides that "religious societies, or bodies of men that may be united or incorporated for the advancement of religion and learning, or for other pious or charitable purposes, shall be encouraged and protected in the enjoyment of the privileges, immunities, and estates which they in justice ought to enjoy, under such regulation as the General Assembly of this State shall direct."

It is open to serious doubt that the agreed statement, construed in the manner above mentioned, discloses that the plaintiff is a charitable organization. It is true that it incidentally maintains a charitable fund, which it disburses for charitable activities, but the mere fact that it teaches a system of morality and conduct which includes charity as a principal tenet, can hardly be said to impress upon it the character of an organization of this nature. In like manner, it is somewhat questionable whether the Temple is sequestered or used for such a purpose. In *Grand Lodge of Masons* v. *City of Burlington,* 84 Vt. 202, 208, 78 Atl. 973, the question of the exemption of this same building was presented, and considered. The court assumed, but did not decide, that the expenditure of the rent in the way in which the plaintiff dispenses its charities and for the purposes named in the resolution, would be a charitable use of it within the meaning of the statute, and held that, since the Temple was not as yet paid for, and the income was then being used for that purpose, the time for its expenditure for charity had not arrived, and that the mere intention so to use it at a future time was not a use of the property for charitable purposes, within the meaning of the statute. But it was further pointed out that by the word "used," employed in the statute, as applied to real estate, the direct and immediate use of the property itself is meant, and not the remote and consequential benefit derived from its use, and various decisions were cited with approval, holding that where the profits or income of build-

ings are appropriated to pious or educational purposes, the real estate itself is not used for such purposes. The test is not the ownership, but the use. *Stiles* v. *Newport*, 76 Vt. 154, 164, 56 Atl. 662.

However, it is not necessary to decide whether either of these facts appears directly or by necessary implication in the agreed statement, or whether a charity, in order to come within the meaning of the statute, must be a public one, as the defendant claims, or, if so, whether this is the character of the Masonic body; because, assuming the plaintiff's claim to be sound, the exemption, if any, is not to be obtained under G. L. 684, subd. VI, but under G. L. 694, as amended by No. 17, Acts 1927, which provides that: ''If a society or body of persons associated for a charitable purpose in whole or in part, including fraternal organizations, owns real estate used exclusively for the purposes of such society, body or organization, such real estate may be exempted from taxation, either in whole or in part, for a period of not exceeding ten years, if the town where such real estate is situated so votes. Upon the expiration of such exemption, a town may vote additional periods of exemption not exceeding five years each.'' This statute is a much more recent enactment than G. L. 684, subd. VI. It first appeared as No. 26, Acts 1906, was re-enacted in slightly different wording as G. L. 694 (1917) and assumed its present form by the amendatory act of 1927, to which reference has been made. On the other hand, the exemption of real and personal estate granted, sequestered, or used for public, pious or charitable purposes, as contained in G. L. 684, subd. VI, has been a part of our statute law, at least since the revision of 1870, G. S. Ch. 83, § 6.

G. L. 684, subd. VI, and G. L. 694 as amended, are sufficiently cognate to be *in pari materia,* since they both relate to the exemption of property from taxation, and they are therefore to be construed with reference to each other as parts of one system. *Newman* v. *Garfield,* 93 Vt. 16, 18, 19, 104 Atl. 881, 5 A. L. R. 1507; *Clifford* v. *West Hartford Creamery Co.,* 103 Vt. 229, 257, 153 Atl. 205. In the construction of statutes dealing with the same subject-matter, the legislative intent must control. *Burke* v. *Beecher,* 101 Vt. 441, 446, 144 Atl. 200; *In re James,* 99 Vt. 265, 271, 132 Atl. 40.

By G..L. 684, subd. VI, a general provision is made for the exemption from taxation of property granted, sequestered, or used for charitable purposes. By G. L. 694, as amended, this general exemption does not apply to the case of real estate owned by a society, or body of persons, associated for a charitable purpose in whole or in part, including fraternal organizations and used exclusively for the purposes of such society, body, or organization; but an exemption for a limited time may be had by vote of the town. The latter statute clearly constitutes an exception to, or qualification of, the former. See *In re James, supra,* 99 Vt. at page 272, 132 Atl. 40.

It is significant that G. L. 694 was first enacted in 1906, during the next session of the Legislature following the decision in *Grand Lodge* v. *City of Burlington, supra,* in which the same claim for exemption was made as is made here. It is fairly to be inferred that the statute was designed to cover the case of an organization of the nature which the plaintiff claims the Masonic body to be. Whether the agreed statement shows that the Temple is used exclusively for its purposes, it is not necessary to decide. At any rate, we hold that G. L. 684, subd. VI, does not apply, and that there can be no exemption under G. L. 694, as amended, if for no other reason, because there has been no vote of the city of Burlington authorizing it.

*Judgment affirmed.*